**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1031

_____

United States of America,             *
                                   *

        Plaintiff - Appellee,     *
                                   *

     v.                      *
                                   *

Ruffus Raglin Stelivan,         *
                                   *

        Defendant - Appellant.   *

_____

No. 97-1032

_____

United States of America,             *
                                   *

        Plaintiff - Appellee,     *
                       *  Appeals from the United States

     v.                      *  District Court for the
                                 *  Eastern District of Arkansas.

Paul Anthony McGee,           *
                                   *

        Defendant - Appellant.   *

_____

No. 97-1034

_____

United States of America,      *
          *
      Plaintiff - Appellee,    *
          *
      v.          *
          *
Michael Dean Raglin,      *
          *
      Defendant - Appellant.   *

_____

Submitted:  April 17, 1997
Filed:  September 8, 1997

_____

Before  RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, and FAGG, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

Appellant Ruffus Stelivan pleaded guilty to one count of conspiring to distribute cocaine and one count of conspiring to transport stolen property across a state line.  See 18 U.S.C. § 371 (1994).  The district court sentenced Stelivan to two consecutive sixty-month terms  of imprisonment.[1]  Stelivan challenges his sentence on appeal.

_____

[1]The conspiracy statute under which Stelivan  pleaded guilty carries a maximum term of sixty months imprisonment.  See 18 U.S.C. § 371 (1994).

A jury convicted appellants Michael Raglin and Paul McGee of aiding and abetting the interstate transportation of stolen property. See 18 U.S.C. § 2314 (1994). Raglin and McGee challenge their convictions on appeal.

## I. BACKGROUND

In February of 1995, Patricia Davis agreed to assist the Federal Bureau of Investigation ("FBI") in its investigation of stolen four-wheel all-terrain vehicles ("four-wheelers") in Arkansas. The FBI's efforts focused primarily on Stelivan. Davis's cooperation was helpful because she had purchased numerous stolen four-wheelers from Stelivan in the past. During the investigation, the FBI monitored and recorded several illicit transactions between Stelivan and Davis. On four separate occasions in early October, Stelivan sold cocaine and crack cocaine to Davis. On October 25, 1995, Stelivan sold five stolen four-wheelers to Davis. Stelivan transported the vehicles from Arkansas to Oklahoma with the help of Raglin and McGee. Stelivan believed Davis wanted to sell the vehicles in Oklahoma because she already had a potential buyer and it would be safer to sell the vehicles in Oklahoma rather than in the area from which they were stolen. On October 25, Raglin, McGee, and Davis traveled from Arkansas to Oklahoma in a car borrowed from Raglin's girlfriend. Stelivan followed the threesome in a U-Haul truck loaded with the stolen four-wheelers. When the group reached Oklahoma, Raglin and Stelivan attempted to start the four-wheelers, to ensure that they were sale-worthy. McGee and Davis stood watch. An FBI agent arrived on the scene posing as Davis's "buyer." Davis gave Stelivan partial payment for the four-wheelers. Stelivan, Raglin, and McGee drove back to Arkansas, while Davis and the "buyer" remained behind with the U-Haul and stolen vehicles.

Stelivan pleaded guilty to one count of conspiracy to distribute cocaine and one count of interstate transportation of stolen property. The district court sentenced Stelivan to two consecutive sixty-month terms of imprisonment. Stelivan challenges his sentence claiming that the district court committed error when it applied the

Sentencing Guidelines Manual's career offender guideline to his sentence. He also contends that the crack cocaine versus powder cocaine sentencing ratio is unconstitutional. We affirm Stelivan's sentence.

A jury convicted Raglin and McGee of aiding and abetting the interstate transportation of stolen property. On appeal, Raglin and McGee argue that the district court abused its discretion when it improperly admitted hearsay testimony and committed error when it denied their motions for acquittal. Raglin additionally claims that the government's use of leading questions prejudiced his trial. Because we conclude that the district court[2] did not commit error, we affirm.

## II.    DISCUSSION

### A.    Stelivan's arguments

At Stelivan's sentencing, the district court applied the career offender guideline after determining that he committed an offense involving a controlled substance. See U.S. Sentencing Guidelines Manual § 4B1.1 (1995). Stelivan claims that the district court should not have applied the career offender guideline because 18 U.S.C. § 371, the statute under which he pleaded guilty, is a conspiracy offense rather than a controlled substance offense. Stelivan pleaded guilty to conspiring to distribute cocaine. Under the sentencing guidelines, the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S. Sentencing Guidelines Manual § 4B1.2, application note 1 (1995); see also United States v. Mendoza-Figueroa, 65 F.3d 691, 694 (8th Cir. 1995) (en banc) (holding that Sentencing Commission's decision to include conspiracies to

---

[2]The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the Eastern District of Arkansas, imposed Stelivan's sentence and presided over Raglin and McGee's trial.

commit controlled substance offenses under career offender guideline was within statutory authority), cert. denied, 116 S. Ct. 939 (1996). Therefore, the district court properly determined that Stelivan should be sentenced as a career offender.[3] See Mendoza-Figueroa, 65 F.3d at 694. We also reject Stelivan's contention that the crack cocaine versus powder cocaine sentencing ratio is unconstitutional because this argument is foreclosed by opinions of this court. See, e.g., United States v. Jackson, 67 F.3d 1359, 1367 (8th Cir.1995), cert. denied, 116 S. Ct. 1684 (1996); United States v. Clary, 34 F.3d 709, 710-14 (8th Cir.1994), cert. denied, 513 U.S. 1182 (1995).

### B. Raglin's and McGee's arguments

During Raglin and McGee's trial, Davis testified extensively about conversations she had with Stelivan regarding the October 1995 four-wheeler transaction. Davis also testified about conversations she had with Raglin and McGee during their drive to Oklahoma. McGee contends that the district court should not have allowed Davis's testimony regarding statements by Stelivan and Raglin because the Government did not establish McGee's participation in a conspiracy by a preponderance of evidence. McGee therefore reasons that the statements were inadmissible as hearsay. Raglin raises the same argument regarding statements by Stelivan and McGee.

"A coconspirator's out-of-court statement is admissible against a defendant if the government establishes: (1) [t]hat a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Raymond, 793 F.2d 928, 930 (8th Cir. 1986) (quotation and citation omitted). The Government must demonstrate the conspiracy by a preponderance of the evidence and "may meet

---

[3]We note that even had the district court committed error in applying the career offender guideline to Stelivan, we would nonetheless affirm the sentence because, under the lower criminal history category, Stelivan still would have been sentenced to the maximum term of 120 months for two counts of violating 18 U.S.C. § 371.

its burden using the disputed statements themselves."  United States v. Carper, 942 F.2d 1298, 1301 (8th Cir.), cert. denied, 502 U.S. 993 (1991).  The following evidence established McGee's participation in the conspiracy by a preponderance of evidence:  (1) Stelivan testified that, prior to the trip, he told McGee he was going to transport vehicles to Oklahoma; (2) McGee agreed to accompany Stelivan and Davis on the trip; (3) McGee called Stelivan to tell him where to find the keys to the U-Haul; (4) Davis testified that Stelivan told her that McGee would be going with them to Oklahoma; (5) photographic evidence showed McGee and Raglin picking up Davis to drive her to Oklahoma; (6) during the trip to Oklahoma, McGee asked Davis if she had a need for any stolen John Deere lawnmowers;  and (7) photographic and video evidence showed McGee's presence in Arkansas and Oklahoma during the interstate transportation of the stolen property.

Similar evidence established Raglin's participation in the conspiracy:  (1) Raglin borrowed his girlfriend's car to drive Davis to Oklahoma; (2) photographic and video evidence showed Raglin's presence in Arkansas and Oklahoma during the commission of the crime; (3) upon arrival in Oklahoma, Raglin helped Stelivan get the four-wheelers started; (4) Stelivan told Davis ahead of time that Raglin and McGee would drive her to Oklahoma; (5) Davis testified that, during the drive to Oklahoma, Raglin informed her that he was very tired because he had been up since 2:30 a.m. "getting" the four-wheelers; (6) Raglin and McGee picked Davis up to drive her to Oklahoma; (7) Raglin told Davis he was glad to be going on the trip because he had not worked in some time and needed the money; and (9) Raglin told Davis that he had rented the U-Haul for the trip and bought a lock for the U-Haul.  After reviewing the evidence in the record, we conclude the Government established that McGee and Raglin participated in a conspiracy to transport stolen property across state lines by a preponderance of the evidence.  Therefore, the district court properly admitted the testimony in question as nonhearsay.  See Fed. R. Evid. 801(d)(2)(E).

McGee and Raglin further argue that the district court committed error when it rejected their motions for judgment of acquittal. Specifically, both appellants claim that the Government did not prove they had knowledge that the four-wheelers were stolen. When reviewing the sufficiency of the evidence, we will view the evidence in the light most favorable to the Government and will give the Government the benefit of all inferences that may logically be drawn from such evidence. See United States v. Jones, 16 F.3d 275, 277-78 (8th Cir. 1994). "We must sustain the verdict if it is supported by substantial evidence, and may only reverse if we find that a reasonable jury could not have found the defendant guilty beyond a reasonable doubt." Id. (citations omitted). After reviewing the evidence produced at trial, we conclude that a reasonable jury could have determined that McGee and Raglin knew the four-wheelers were stolen. Both appellants claim that the only evidence of knowledge was presented in the form of accomplice testimony from unreliable witnesses (Stelivan and Davis). However, "[a]ccomplice testimony is sufficient to support a conviction when it is not incredible or insubstantial on its face." United States v. Drews, 877 F.2d 10, 13 (8th Cir. 1989). Although the witness testimony was not without some inconsistencies, we cannot conclude that the testimony was incredible or insubstantial. Rather, the testimony sufficiently allowed the jury to conclude that McGee and Raglin had knowledge that the four-wheelers were stolen.

The government presented evidence sufficient to establish McGee's knowledge that the four-wheelers were stolen. When asked whether McGee knew the vehicles were stolen, Stelivan responded: "He -- I -- yeah, I assume. I -- well, I'm sure he did because I -- I had told him that I was going to do it." Tr. Transcript I. at 61. During the trip, McGee asked Davis whether she could use some stolen John Deere mowers, indicating his knowledge that the four-wheelers were also stolen. From this evidence, a reasonable jury could have concluded that McGee knew the vehicles were stolen.

The Government also presented evidence sufficient to establish Raglin's knowledge that the four-wheelers were stolen. Davis testified that Raglin stated he

-7-

rented the U-Haul under an alias so that law enforcement authorities could not trace the truck back to him if authorities found the truck carrying stolen vehicles across the state line. Davis also testified that during the drive to Oklahoma, Raglin told her he was tired because he had been up since 2:30 a.m. getting the four-wheelers.[4] Raglin also told Davis he was glad to be going on the trip because he needed money. Based on this evidence, a reasonable jury could have concluded that Raglin knew the four-wheelers were stolen.

Finally, Raglin contends that the district court abused its discretion when it allowed the Government's attorney to ask several leading questions. Raglin also contends that his attorney had to make repeated objections in response to the Government's leading questions which amounted to extreme prejudice. Leading questions generally are not permitted during direct examination but may be used where "necessary to develop the witness' testimony." Fed. R. Evid. 611(c). The trial court is in the best position to evaluate the necessity of leading questions during direct examination, see United States v. Nabors, 762 F.2d 642, 651 (8th Cir. 1985), and we will not reverse a trial court's decision to allow leading questions absent an abuse of discretion, see United States v. Reddix, 106 F.3d 236, 238 (8th Cir. 1997). In this

---

[4]During the drive back to Arkansas with the FBI agent, Davis recorded her version of the events that transpired in the form of a written statement. Missing from Davis's statement is her claim that Raglin told her he was tired because he had been up since 2:30 a.m. getting the four-wheelers. Raglin asserts that Davis's testimony is discredited because she testified regarding information that was not included in her statement. We do not conclude that Davis's failure to include this information in her statement renders the evidence incredible or insubstantial on its face. The jury heard the evidence put forth by the Government, and heard Raglin's attorney cross examine Davis about information she failed to record in her FBI statement. The jury then weighed the evidence and presumably made a credibility determination on the witness testimony. This type of witness credibility determination is "virtually unreviewable on appeal." See United States v. Adipietro, 983 F.2d 1468, 1472 (8th Cir. 1993) (quotations omitted).

case, the district court allowed the prosecutor to ask leading questions of Stelivan because he was inarticulate and evasive. The district court judge had presided over Stelivan's guilty plea proceeding and was therefore familiar with his manner of testifying. Having reviewed the record, we do not believe the district court abused its discretion when it allowed the Government to ask leading questions of Stelivan.

During re-direct examination of Davis, Raglin objected to four of the Government's questions as being leading in nature. The district court sustained three objections and overruled one. After the Government asked the final leading question, Raglin's attorney requested a mistrial, arguing that Raglin was prejudiced by the continual objections. The district court overruled the motion for a mistrial but offered a stern warning to the Government's attorney, cautioning that the leading questions could not continue. We cannot conclude the district court's handling of this matter amounted to an abuse of discretion.

## III.  CONCLUSION

Based on the reasons set forth in this opinion, we affirm Stelivan's sentence. We also affirm Raglin's and McGee's convictions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.