# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1769
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Bruce Withorn, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 16, 1999

Filed: February 22, 2000
_____

Before WOLLMAN, Chief Judge, LAY, and BOWMAN, Circuit Judges.
_____

WOLLMAN, Chief Judge.

Bruce Withorn appeals from his conviction on one count of aggravated sexual abuse by the use of force, in violation of 18 U.S.C. § 2241(a), and one count of sexual abuse of a minor, in violation of 18 U.S.C. § 2243(a). He alleges evidentiary and constitutional errors. We affirm.

# I.

On July 7, 1998, Withorn beat and forcibly raped H.S., a 12-year-old girl, on the Crow Creek Sioux Indian Reservation. Withorn, an enrolled member of the Crow Creek Sioux Tribe, was 19 years old at the time and was on federal probation as a result of a juvenile conviction for a firearms offense. When Withorn was arrested by tribal authorities shortly after the incident, he appeared to be intoxicated.

Because alcohol consumption violated the terms of Withorn's probation, his probation officer, Tanya Krietlow, came to the tribal jail on July 8 to obtain a urine sample from Withorn. There, Withorn called Krietlow over to his cell and initiated a conversation in which he informed her that he had had sexual intercourse with H.S., but that he had believed that H.S. was 16 years old and that she "wanted it." Krietlow testified to this conversation at trial.

The jury also heard from Sally Hill, a certified nurse midwife who conducted a sexual assault examination of H.S. early in the morning of July 8, 1998, at the Mid-Dakota Hospital in Chamberlain, South Dakota. Over the defense's objection that portions of her testimony constituted expert testimony offered without adequate foundation, Hill related her observation that H.S. had been "run through the mill." She described swelling, bruises, and scratches on various parts of H.S.'s body apparently resulting from "blunt trauma." Hill testified that during the course of the examination H.S. claimed that she had been struck, choked, and raped by Withorn. Hill stated that the injuries she observed were fully consistent with H.S.'s claim.

The government also called Withorn's cousin, R.M., to testify at trial. R.M. described how, when she was 12 years old, Withorn forcibly raped her in his car and later claimed that she had consented. This incident led to a juvenile adjudication of incest against Withorn. R.M. was a reluctant witness, and in an attempt to set her at ease the district court barred from the courtroom some of Withorn's family members,

as well as R.M.'s mother, who was opposed to her daughter testifying, during R.M.'s testimony. In addition, the court at times permitted the government to ask leading questions because of R.M.'s hesitancy to tell her story.

As part of his defense, Withorn attempted to introduce evidence of a previous sexual assault accusation made by H.S. several years earlier against Chris Fallis, a teenage friend of Withorn who had committed suicide before the matter could be adjudicated. Withorn believed that H.S.'s allegation of forcible rape against Fallis, who claimed that H.S. had consented to intercourse, suggested a pattern of false accusations by H.S. During the jail-cell conversation with Krietlow, Withorn indicated his belief that such a pattern existed by stating that "the same thing happened to Chris Fallis." At trial, the court granted the government's motion to suppress this portion of Withorn's statement to Krietlow and prohibited the defense from introducing any other evidence about the Fallis incident.

The jury convicted Withorn on both counts, and the district court[1] imposed concurrent sentences totaling 20 years' imprisonment.

## II.
## A.

Withorn argues that it was error to admit evidence of his past sexual assault while simultaneously excluding evidence that another man whom H.S. accused of sexual assault had claimed that she consented. We begin by analyzing these evidentiary decisions individually, and then consider their effect in combination. We will not reverse a district court's evidentiary rulings unless they constitute a clear and

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas, sitting by designation.

prejudicial abuse of discretion.  See United States v. Goodson, 155 F.3d 963, 969 (8th Cir. 1998).

## 1.

R.M.'s testimony that Withorn sexually assaulted her was admitted pursuant to Rules 413 and 414 of the Federal Rules of Evidence, recently enacted provisions that create exceptions to the general rule that evidence of past crimes may not be used "to prove the character of a person in order to show action in conformity therewith." See Fed. R. Evid. 404(b).  Rule 413 expressly permits the use of evidence of any past sexual assault offense "for its bearing on any matter to which it is relevant" in an ongoing sexual assault prosecution.  Likewise, Rule 414 permits the introduction of evidence of past child molestation offenses in child molestation prosecutions. See Fed. R. Evid. 413 & 414.  The district court found the rules applicable in Withorn's case, and we agree.

In considering whether to admit evidence under Rules 413 and 414, federal district courts must still apply the "balancing test" of Rule 403, which calls for the exclusion of evidence whose probative value is substantially outweighed by its potential for unfair prejudice.  See United States v. Mound, 149 F.3d 799, 800 (8th Cir. 1998); United States v. Sumner, 119 F.3d 658, 661-62 (8th Cir. 1997).  In doing so, however, courts must balance probative value against potential for unfair prejudice "in such a way as to allow the new rules their intended effect."  Mound, 149 F.3d at 800 (brackets, citations, and internal quotation marks omitted).  Thus, in determining the admissibility of R.M.'s testimony the district court was obligated to take into account Congress's policy judgment that Rule 413 was "justified by the distinctive characteristics of the cases it will affect," and that Rule 414 evidence is "exceptionally probative" of a defendant's sexual interest in children.  Mound, 149 F.3d at 801 (quoting 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)).

In light of this "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible," United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997), we conclude that the district court did not abuse its discretion in allowing R.M. to testify. The incident R.M. described was substantially similar to H.S.'s experience with Withorn. The victims were approximately the same age at the time of the rapes, and both assaults involved force and occurred after Withorn had isolated the victims from others. Both victims also testified that immediately after the incident Withorn threatened them not to inform anyone what had occurred, and in each case Withorn's defense was to claim that the victim had consented to the sexual activity. Because of these parallels, R.M.'s testimony was probative evidence showing Withorn's propensity toward the type of behavior H.S. alleged.

Moreover, we do not find that R.M.'s testimony "presented any danger of unfair prejudice beyond that which all propensity evidence in such trials presents, but is now allowed by Rule 413." Mound, 149 F.3d at 802 (citation and internal quotation marks omitted). It is not unusual for a young victim in sexual abuse cases to exhibit fear and a reluctance to testify. See, e.g., United States v. Eagle, 137 F.3d 1011, 1013 (8th Cir. 1998) (child victim of sexual abuse afraid to point out defendant in courtroom). The district court's decisions to partially clear the courtroom and to permit leading questions, which were justified by the need to prevent substantial psychological harm to R.M. and to enable her to communicate effectively, did not unfairly prejudice Withorn in the jury's eyes. See United States v. Stelivan, 125 F.3d 603, 608 (8th Cir. 1997) (rejecting argument that trial court's decision to allow leading questions of "inarticulate and evasive" witness created "extreme prejudice"); 18 U.S.C. § 3509(e) (permitting courtroom to be closed to the public to facilitate the testimony of a child witness); comment to Fed. R. Evid. 611(c) (noting tradition of allowing leading questions for child witnesses); cf. Zeitvogel v. Delo, 84 F.3d 276, 283 (8th Cir. 1996) (rejecting argument that trial court's ruling requiring defendant to remain shackled in courtroom caused undue prejudice where the ruling "was clearly proper" as a means

to protect others in the courtroom). Thus, we cannot say that the manner and circumstances of R.M.'s testimony deprived Withorn of a fair trial.

**2.**

In excluding evidence of H.S.'s prior allegation against Fallis, the district court relied on Rule 412, which generally prohibits evidence of the victim's past sexual behavior in sex offense cases. See Fed. R. Evid. 412(a)(1).

Withorn wished to introduce H.S.'s prior rape allegation against Fallis in the hope that the jury might infer that H.S. was lying based on the fact that both Fallis and Withorn claimed that she had consented to intercourse. A conclusion that H.S.'s unadjudicated accusation against Fallis was untrue, however, would have required the jury to rely on sheer speculation. Moreover, impeaching the victim's truthfulness and showing her capability to fabricate a story "are not recognized exceptions to Rule 412." United States v. White Buffalo, 84 F.3d 1052, 1054 (8th Cir. 1996); cf. United States v. Bartlett, 856 F.2d 1071, 1088-89 (8th Cir. 1988) (finding prior false rape accusation inadmissible under either Rule 412 or Rule 608(b), which prohibits use of extrinsic evidence to prove specific instances of conduct for the purpose of attacking a witness's credibility except where such evidence is "probative of [the witness's] truthfulness or untruthfulness"). "In the absence of an applicable exception, Rule 412 specifically bars admission of evidence of the past sexual behavior of an alleged rape victim." White Buffalo, 84 F.3d at 1054 (citation and internal quotation marks omitted). Accordingly, the district court acted well within its discretion in limiting the cross-examination of Krietlow to exclude Withorn's statement that "the same thing happened to Chris Fallis" and in preventing the defense from introducing any other evidence of H.S.'s allegedly false prior accusation.

**3.**

Withorn argues that application of Rules 412, 413, and 414 in concert violated his constitutional right to a fair trial. We construe this argument as a due process claim, and evaluate it under the "fundamental fairness" standard of Dowling v. United States, 493 U.S. 342, 352 (1990).

"Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Id. Because the Supreme Court has "defined the category of infractions that violate fundamental fairness very narrowly," courts are "not free, in defining due process, to impose . . . their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function." Id. (brackets, citations, and internal quotation marks omitted). In order to prevail, Withorn must show that the combined effect of the district court's evidentiary decisions was "so extremely unfair" as to "violate those fundamental conceptions of justice which lie at the base of our civil and political institutions." See id. at 353 (citation and internal quotation marks omitted).

We have upheld the constitutionality of Rules 413 and 414 in the face of due process challenges, see United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998), and thus we may not revisit that question here. See United States v. Prior, 107 F.3d 654, 660 (8th Cir. 1997) (one panel not at liberty to overrule decision of another panel). Moreover, this is not the first time Rules 412, 413 and 414 have been applied together in a single case. In United States v. Eagle, 137 F.3d 1011, 1014-16 (8th Cir. 1998), the two defendants challenged both the exclusion of evidence of the alleged victim's past sexual behavior and the admission of evidence regarding their own prior sex offenses. We affirmed the district court's evidentiary decisions under both Rule 412 and Rules 413-14 in Eagle, see id., and we reach the same result in this case.

Without question, Rules 412, 413, and 414, applied in a single case, make it easier for the government to prosecute sex offense cases. As we held in <u>Mound</u>, however, "[p]romoting the effective prosecution of sex offenses is a legitimate end." <u>See</u> 149 F.3d at 801 (brackets added). Accordingly, we conclude that the overall effect of applying the three rules in combination is not so unfair as to violate fundamental conceptions of justice. <u>See</u> <u>Dowling</u>, 493 U.S. at 352-53.

**B.**

Withorn next argues that his confession to Krietlow should have been suppressed because he was never given a <u>Miranda</u> warning. To be protected by the Fifth Amendment, the statement must have been made while in police custody and in response to police interrogation, <u>see</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966), or its "functional equivalent." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980). "We have repeatedly held that a voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of <u>Miranda</u> warnings." <u>United States v. Hatten</u>, 68 F.3d 257, 262 (8th Cir. 1995) (citing <u>Innis</u>, 446 U.S. at 299 (1980)) (internal quotation marks omitted).

Although Withorn was clearly in custody, he initiated the conversation with Krietlow, and he has presented no evidence to support his theory that the police asked Krietlow to see him with the hope that her presence would induce Withorn to confess his crime. Thus, admitting his spontaneous confession to Krietlow did not violate Withorn's Fifth Amendment rights.

**C.**

Finally, Withorn challenges the testimony of Sally Hill, the certified nurse midwife who was called into the hospital emergency room to examine H.S. on the morning of the incident. Specifically, Withorn asserts that Hill's statements that H.S.'s

overall injuries were consistent with her description of a violent sexual assault and that they were probably caused by "blunt trauma" were expert testimony offered without adequate foundation.

Rule 702 permits any witness "qualified as an expert by knowledge, skill, experience, training, or education" to present "scientific, technical, or other specialized knowledge" if such information will be helpful to the jury.  Fed. R. Evid. 702.  This rule envisions a "flexible" inquiry by the trial judge, who is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579, 594, 597 (1993); cf. comment to Fed. R. Evid. 702 (describing rule as "broadly phrased").  We review decisions regarding the admissibility of expert testimony, including decisions about how to determine reliability, for abuse of discretion.  See Blue Dane Simmental Corp. v. American Simmental Assoc., 178 F.3d 1035, 1039 (8th Cir. 1999).

In this case, Hill was not only an expert witness but also the medical official who conducted the initial rape examination of the victim, H.S.  At trial, she provided a detailed description of her training, qualifications, and experience, which included a four-year bachelor's degree in nursing, two years of post-graduate work to receive her degree as a midwife, and more than five years of practice as a clinical and hospital nurse midwife.  Hill testified that she had received special training in conducting examinations of rape victims, that she had provided emergency coverage for obstetrics and gynecology in the past, and that a significant part of her practice consisted of treating young teenage girls.  We find that this extensive background adequately qualified Hill to make the observations she did regarding the injuries to H.S, observations that the district court reasonably found were helpful to the jury.  See Daubert, 509 U.S. at 597.  There is nothing unusual about permitting expert testimony by certified nurse midwives in rape prosecutions, see, e.g., United States v. Shaw, 824 F.2d 601, 604-05 (8th Cir. 1987), and we hold that the district court did not abuse its discretion by doing so here.

The judgment of conviction is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-