**UNITED STATES of America, Plaintiff,**

v.

**Karl Lynn HUNT, Defendant.**

No. 02–CR–198.

United States District Court, S.D. Iowa.

May 9, 2003.

Clifford D. Wendel, Jr., Shannon L. Olson, United States Attorney, Des Moines, IA, for Plaintiff.

Sheldon Halpern, Royal Oak, MI, for Defendant.

## ORDER ON MOTION TO SUPPRESS

GRITZNER, District Judge.

On April 23, 2003, Defendant's Motion for Suppression and Limitation of Evidence came on for hearing. Defendant was represented by Sheldon Halpern. The Government was represented by Assistant United States Attorney Cliff Wendel. The motion is now fully submitted to the Court for review.

### *Summary of Material Facts*

On July 28, 2002, Karl Lynn Hunt ("Defendant") was placed into custody after a search of his rental vehicle revealed a large amount of illegal narcotics in the trunk. Defendant was given his *Miranda*[1] rights by Iowa State Trooper Bardsley, the trooper who had made the initial stop on Defendant's vehicle. Defendant was told he was only being detained and that he was not under arrest at that time. According to both Trooper Bardsley and Defendant, immediately upon being read his rights, Defendant stated that he wanted to talk to his attorney. Unfortunately, the videotape of the traffic stop is inaudible at that point; however, given the consistency between the testimony of both Trooper Bardsley and Defendant, the Court will assume that Defendant did assert his Fifth Amendment right to counsel at that time.

Defendant was then placed in the back seat of Trooper Bardsley's patrol unit. Soon thereafter, Trooper Bardsley entered his patrol unit and continued making radio communication with dispatch. The videotape evidences the fact that Trooper Bardsley did not initiate any conversation with the Defendant at this time. While

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

seated in the back of the patrol car, Defendant began asking Trooper Bardsley a series of questions, including whether he was under arrest and when the arrest decision would be made. It also appears that Defendant inquired about the initial stop and who would be conducting any further investigation.

Defendant was then taken to the Iowa State Patrol Post in Council Bluffs, Iowa. Steven Lamp ("Agent Lamp"), a Special Agent with the Iowa Division of Narcotics Enforcement, was called to the Iowa State Patrol Post to assist in the investigation at approximately 7:15 p.m. Trooper Bardsley informed Agent Lamp that Defendant had already been given his *Miranda* rights. Agent Lamp testified he was not informed by Trooper Bardsley that Defendant had previously asserted his right to counsel. Lamp encountered Defendant in the hallway[2] at the Iowa State Patrol Post and explained to Defendant that his purpose in the investigation was to determine whether or not Defendant would be willing to cooperate. Agent Lamp explained to Defendant that he was a State of Iowa Narcotics Task Force Agent, and that, in addition, he was a Federal Task Force Agent with the Omaha Office of the DEA. Agent Lamp asked Defendant if he would be willing to cooperate and allow Agent Lamp to interview him. Defendant said, "It's Steve?", to which Agent Lamp replied, "Yeah." Defendant then said, "Steve, how much money would it take for you to keep the dope and for us to go home?" Agent Lamp asked Defendant if he was trying to bribe him, to which Defendant responded that he was not. Agent Lamp told Defendant that bribery was a crime separate from the drug offenses he was facing, and

that he would also be charged with bribery. It appears from reviewing the record that it was at this time Defendant indicated he did not want to talk to law enforcement and again asserted his Fifth Amendment right to counsel

In August of 2002, Defendant was indicted on four counts charging him with conspiracy to distribute cocaine (Count I), possession of cocaine with intent to distribute (Count II), possession of heroin with intent to distribute (Count III), and obstruction of justice (Count IV).

On January 9, 2003, Defendant's motion to suppress was granted by the Honorable Senior Judge Harold Vietor. In his Memorandum Opinion, Judge Vietor held that during the initial stop of the vehicle, Trooper Bardsley's suspicion did not rise to the level of a reasonable, articulable suspicion that criminal activity was afoot, and the prolonged detention of Defendant was in violation of his rights under the Fourth Amendment. Judge Vietor indicated that the Government would not be allowed to introduce at trial evidence seized in the search of the vehicle and would not be allowed to introduce evidence of statements made by Defendant in response to interrogation by Trooper Bardsley after he was taken into custody. Judge Vietor indicated in his opinion that the Court was not, by its ruling on the motion to suppress, determining whether evidence of the alleged statement by Defendant to a law enforcement officer would be admissible with respect to Count IV.

Defendant claims that law enforcement attempted to interrogate him in violation of his Fifth Amendment rights. Defendant states that the fruits of any unlawful

**2.** There is some dispute in the record regarding where in the Iowa State Patrol Post Agent Lamp encountered Defendant; however, determining the exact location of the interaction between Agent Lamp and Defendant is irrele-

vant to the Court's ultimate determination. Both Agent Lamp and Defendant indicated that their encounter occurred in the hallway of the Patrol Post; therefore, the Court will assume this is where the interaction occurred.

interrogation should be excluded from the Government's presentation of evidence at trial.

### FINDINGS

After being advised of his *Miranda* rights, Defendant asserted his Fifth Amendment right to counsel. A defendant "having expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also United States v. Surridge*, 687 F.2d 250, 253 (8th Cir.1982). "A defendant initiates an interrogation if he or she evinces a willingness and a desire for a generalized discussion about the investigation." *Owens v. Bowersox*, 290 F.3d 960, 963 (8th Cir.2002) (internal quotation marks omitted). After being placed in the patrol unit, Defendant asked Trooper Bardsley several questions about the investigation, including whether he was under arrest, and when the decision would be made as to whether he would be placed under arrest. In addition, Defendant was inquiring about the initial stop and who would be conducting any further investigation. It is apparent Defendant was attempting to engage Trooper Bardsley in conversation, and Defendant clearly demonstrated a willingness and a desire for a generalized discussion about the investigation.

■ "[O]nce a defendant invokes his or her right to counsel, the defendant's initiation of police interrogation is necessary but not sufficient to establish a waiver of that right. The ultimate question is whether the circumstances as a whole (including the initiation) indicate that the de-fendant voluntarily, knowingly, and intelligently waived his or her right to counsel." *Id.* at 964. Defendant indicated to Trooper Bardsley that he understood his *Miranda* rights. The conduct of Defendant, both on the videotape of the traffic stop and as he testified at the suppression hearing, illustrates that Defendant is a person of average or above average intelligence who was able to comprehend the nature of the circumstances going on around him. Further, there is no evidence in the record which demonstrates that Defendant was in any way coerced, deceived, or intimidated by Trooper Bardsley in an effort to pressure Defendant to waive his right to counsel. The Court finds the Defendant voluntarily, knowingly, and intelligently waived his previously asserted right to counsel.

As Defendant had waived his right to counsel when he initiated conversation with Trooper Bardsley in the patrol unit, Agent Lamp did not violate Defendant's Fifth Amendment right to counsel when he introduced himself and asked Defendant if he would like to cooperate and be interviewed.[3] In addition, even if the Court were to find that Defendant had not waived his Fifth Amendment right to counsel, which it does not, "[t]o be protected by the Fifth Amendment, the statement must have been made while in police custody and in response to police interrogation or its functional equivalent." *United States v. Withorn*, 204 F.3d 790, 796 (8th Cir.2000) (internal citations and quotation marks omitted). There is no question in the present case that Defendant was in custody at the time he made the statement in question to Agent Lamp. However, in order to trigger Fifth Amendment protections, Defendant must also show that the statement was made in response to an interrogation.

---

**3.** Due to Defendant's waiver of his right to counsel, it is irrelevant that Trooper Bardsley failed to inform Agent Lamp that Defendant had previously asserted his right to counsel.

██ "Interrogation as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (internal quotation marks omitted). "[T]he term "interrogation" under *Miranda* refers not only to express questioning but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682.

In the present case, there was no way Agent Lamp could have known or foreseen that merely identifying himself to Defendant and asking Defendant if he would be willing to cooperate with law enforcement would elicit an attempted bribe. Defendant's statement was not made in response to an interrogation by Agent Lamp, as asking a defendant if he would like to cooperate and be interviewed is normally attendant to every arrest and custody.

Further, "[a] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings." *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir.1992). Defendant's statement was not made in response to any question Agent Lamp asked. Defendant voluntarily made the statement to Agent Lamp, and the statement is admissible.

Defendant has never alleged that he expressly invoked his Fifth Amendment right to remain silent after Trooper Bardsley gave him his *Miranda* rights, and there is nothing in the record which demonstrates that at any time prior to when the statement was made by Defendant to Agent Lamp that Defendant had asserted his right to remain silent. "[T]o invoke one's right to remain silent, one must un-equivocally express his desire to remain silent." *Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir.2001). Defendant did not express his desire to remain silent until after making the statement in question to Agent Lamp. There is nothing in the record to support the conclusion that law enforcement violated Defendant's Fifth Amendment right to remain silent.

Finally, the Court has been asked to review the record for any violation of the Sixth Amendment right to counsel. To be protected by the Sixth Amendment right to counsel, formal charges must be initiated against the defendant. *United States v. Ingle*, 157 F.3d 1147, 1151 (8th Cir. 1998). In the present case, formal charges had not yet been initiated against Defendant at the time he made the statement to Lamp. The Sixth Amendment right to counsel had not yet attached and does not apply.

### CONCLUSION

Soon after invoking his Fifth Amendment right to counsel, Defendant waived that right by initiating a conversation about the investigation with Trooper Bardsley. Further, it is clear that Defendant's post-*Miranda* statement to Agent Lamp was a voluntary statement that was not made in response to any interrogation. Defendant never asserted his Fifth Amendment right to remain silent, and the Sixth Amendment right to counsel had not yet attached and, therefore, is inapplicable to the circumstances at issue in the present case. Defendant's Motion to Suppress is, therefore, denied.

**IT IS SO ORDERED.**