16-2972-cr
*United States v. Spoor*

**In the**

# United States Court of Appeals
## for the Second Circuit

————

AUGUST TERM 2017

No. 16-2972-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

RONALD T. SPOOR,
*Defendant-Appellant*.

————

On Appeal from the United States District Court
for the Western District of New York

————

ARGUED: MARCH 8, 2018
DECIDED: SEPTEMBER 14, 2018

————

Before: CABRANES, CARNEY, *Circuit Judges*, and CAPRONI, *District Judge.*[*]

_____

TIFFANY H. LEE, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Rochester, NY, *Appellee*.

JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY, *for Appellant-Defendant*.

_____

VALERIE CAPRONI, *District Judge*:

Defendant-appellant Ronald T. Spoor ("Spoor") appeals from an August 18, 2016 judgment of the United States District Court for the Western District of New York (Siragusa, J.) convicting him, following a jury trial, of two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e),[1] and four counts of possession

---

[*] Judge Valerie Caproni, of the United States District Court for the Southern District of New York, sitting by designation.

[1] 18 U.S.C. § 2251(a) provides that:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor

of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).[2] The District Court sentenced Spoor principally to 360 months

engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a). In turn, "sexually explicit conduct" is defined in Section 2256 as:

actual or simulated—
    **(i)** sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
    **(ii)** bestiality;
    **(iii)** masturbation;
    **(iv)** sadistic or masochistic abuse; or
    **(v)** lascivious exhibition of the genitals or pubic area of any person;

18 U.S.C. § 2256(2)(A).

[2] Section 2252A(a)(5)(B) provides that:

Any person who .— knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B).

of imprisonment and 15 years of supervised release. On appeal, Spoor challenges the sufficiency of the evidence; the District Court's *in limine* ruling to admit evidence of his prior conviction for a Criminal Sexual Act in the First Degree, in violation of New York Penal Law § 130.50(3); and the reasonableness of his 360-month sentence. We reject each of Spoor's arguments, and, accordingly, **AFFIRM** the District Court's judgment.

## I. BACKGROUND

On December 17, 2012, Spoor's nephew discovered a cache of what appeared to be child pornography on a hard drive attached to Spoor's computer. The images included young boys, in sexually suggestive positions, and engaged in sex acts with adult men. In response, Spoor's ex-wife and his nephew immediately contacted the New York state police, who took possession of several hard drives found in Spoor's work area and began an investigation.

The hard drives turned over to law enforcement contained two videos that are the subject of the child pornography production charges in this case, as well as certain of the possession charges. The first video is a 24-minute video of Spoor's son and another boy, both naked, playing in a recreational vehicle, or R/V. This video is referred to by the parties as the "Camper Video." The Camper Video begins in a dark, dimly lit room, which appears to be the sleeping area of an R/V. The two boys are under the covers. After several minutes, an unseen person, later identified as Spoor, carries the camera to the foot of the bed and positions it under the covers. For the briefest of moments, the

4

genitals of one of the boys are visible in the center of the screen. The remainder of the video shows the boys playing on the bed while a children's movie plays in the background. The second video, or "Bathroom Video," was shot with a pinhole camera Spoor installed in a bathroom at his parents' home. The camera was positioned underneath what appears to be a sink or vanity and was trained on the toilet. Footage from the camera captured Spoor's son—one of the boys in the Camper Video—changing into a swimsuit and urinating and another boy, identified at trial as "Victim-3," urinating. The genitals of both children are visible in the Bathroom Video.

State authorities referred the case to the Department of Homeland Security ("DHS"). On December 21, 2012, Edward Williams, a DHS special agent, interviewed Spoor. As Agent Williams later recounted at trial, Spoor admitted to him that there was child pornography, which he had downloaded from the internet, on his computers and that he was attracted primarily to boys, aged approximately 13. He also admitted making the videos at issue in this case, but provided innocuous, nonsexual reasons for doing so. According to Williams, Spoor told him he made the videos to show "how silly the boys were being when they were together." A-359.

Spoor was indicted on April 11, 2013. On December 22, 2015, the Government provided notice that, pursuant to Rule 414(a) of the Federal Rules of Evidence, it intended to prove at trial that Spoor had

5

previously committed an offense (or offenses) of "child molestation."[3] Specifically, the Government sought to introduce: evidence that Spoor was convicted in 2013 of Criminal Sexual Act in the First Degree, in violation of New York Penal Law § 130.50(3);[4] that he had admitted to molesting two seven-year-old boys sometime in 2010;[5] testimony from a girl and an adult woman that Spoor had sexually abused them repeatedly when they were children; and testimony from a boy that Spoor had taken photos of him and another boy, naked, in a hotel room sometime in 2011. The District Court ruled that it would admit evidence of Spoor's 2013 conviction, but precluded the Government's other Rule 414 evidence on the grounds that the risk of undue prejudice from this evidence outweighed its marginal probative value.

The case proceeded to trial on January 6, 2016. As is relevant to Spoor's arguments on appeal, the Government relied on the testimony of the agents who examined Spoor's hard drives, the agents who

---

[3] Rule 414(a) provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). Rule 414(b) requires advance notice of the Government's intent to introduce such evidence "at least 15 days before trial or at a later time that the court allows for good cause." Fed. R. Evid. 414(b). The rule defines "child molestation" to include production and possession of child pornography. Fed. R. Evid. 414(d)(2)(B).

[4] Penal Law § 130.50(3) provides that "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person: . . . [3.] Who is less than eleven years old; . . . ." N.Y. Penal Law § 130.50(3).

[5] This conduct was the basis for Spoor's 2013 state conviction.

6

interviewed him, and the videos themselves. The mothers of the three boys in the videos also testified. The mother of Spoor's son, Robin Cooley, testified that her son was born in June 2002 and appeared to be "around seven or eight" years old in the Camper Video, and "at least eight" in the Bathroom Video. A-688-89. Cooley also testified that, based on her recollection, the Camper Video would have been made around her son's tenth birthday in June 2012. The mother of the other boy in the Camper Video testified that he was born in January 2002 and appeared to be "approximately eight or nine" in the Camper Video. A-704. The mother of the second boy in the Bathroom Video testified that he was born in April 2007, and therefore was four or five at the time the Bathroom Video was made.

The jury found Spoor guilty on all counts. On August 15, 2016, the District Court sentenced him principally to 360 months of imprisonment. In explaining the sentence, the District Court began by calculating Spoor's Guidelines range as 360 and 1200 months of incarceration—a point Spoor concedes on appeal.[6] Taking the Guidelines range as a baseline, the District Court rejected Spoor's argument that a below-Guidelines sentence was appropriate in light of his age—Spoor was 52 at the time of sentencing—and because neither of the videos depicts sexual contact or involves lewd or suggestive posing. The District Court explained that, in its view,

---

[6] The District Court calculated Spoor's offense level as 42. Spoor had 3 criminal history points, putting him in criminal history category II. Pursuant to U.S.S.G. § 4B1.5, however, because of his 2013 child molestation conviction, he was put in criminal history category V as a "repeat and dangerous sex offender against minors."

7

Spoor's case was within the "heartland of cases" and characterized his conduct as "deplorable." SPA-36-37. The District Court further found that Spoor's conduct was "indicative of a manifestation of continuing sexual exploitation" and that Spoor was, in the District Court's judgment, "really socially depraved and morally bankrupt." SPA-38. Addressing Spoor's argument that his age made him less likely to recidivate, the District Court explained that, in its view, "anything less [than 360 months] might subject children, even perhaps at your [Spoor's] advanced age, to some danger." SPA-40.

This appeal followed.

## II.    DISCUSSION

On appeal, Spoor challenges the sufficiency of the evidence, the District Court's decision to admit his 2013 conviction, and the substantive reasonableness of his sentence. We address each of these arguments in turn.

### A.

This court reviews a claim related to the sufficiency of the evidence de novo. *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013). Nonetheless, a defendant raising such a challenge carries a "heavy burden." *United States v. Santos*, 449 F.3d 93, 102 (2d Cir. 2006) (quoting *United States v. Bruno*, 383 F.3d 65, 82 (2d Cir. 2004)) (additional citation omitted). The Court must view the evidence in the light most favorable to the prosecution and must draw all inferences in favor of the Government. *Id.* Accordingly, "[a] judgment of acquittal can be

8

entered 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Cuti*, 720 F.3d at 461 (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004)). "In a close case, where 'either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter.'" *Id.* (quoting *United States v. Temple*, 447 F.3d 130, 137 (2d Cir. 2006)). But it remains "axiomatic that[] 'it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty.'" *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993)) (alterations omitted).

We reject Spoor's argument that there was insufficient evidence from which a jury could conclude that the Camper Video and Bathroom Video constituted child pornography. As is set out in the margin above, Section 2251(a) criminalizes the "use" (among other things) of a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." 18 U.S.C. § 2251(a). As far as the production counts are concerned, the only issue presented to the jury was whether the videos depicted "sexually explicit conduct," as that term is defined by Section 2256(2)(A), and, more specifically, whether the videos were "lascivious exhibition[s] of the genitals or pubic area of any person," *Id*. § 2256(2)(A)(v). The statute does not define a "lascivious exhibition." The District Court, relying on the so-called *Dost* factors,

9

instructed the jury that in determining whether the videos constituted a "lascivious exhibition" it was to consider:

> [S]uch factors as, one, whether the focal point of the picture or image is on the child's genitals or pubic area; two, whether the setting of the picture or image is sexually suggestive, that is, in a place or pose generally associated with sexual activity; three, whether the child is depicted in an unnatural or in inappropriate attire considering the age of the minor; four, whether the child is fully or partially clothed or nude; five, whether the picture or image suggests sexual coyness or [willingness] to engage in sexual activity; and six, whether the picture or image is intended or designed to elicit a sexual response from the viewer.

A-879; *see also United States v. Rivera*, 546 F.3d 245, 252-53 (2d Cir. 2008) (approving the factors identified by the District Court and citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). Although the videos are not the most obvious examples of child pornography, given that we must view the evidence in the light most favorable to the Government, there was sufficient evidence from which a jury could conclude that each of the videos depicted a lascivious exhibition.

Throughout the Camper Video, the boys are naked. Although nudity is neither a necessary nor a sufficient feature of child pornography, *see United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999), the Camper Video includes other indicia from which the jury could find that the video was lascivious. The video is set on a sofa bed, an area that can be associated with sexual activity. *See United States v. Barry*, 634 F. App'x 407, 414 (5th Cir. 2015) (finding a "makeshift bed" and a bedroom to be "suggestive"). And, for a few seconds, the camera is positioned under the covers so that the genitals of one of the boys are visible. A reasonable jury could conclude that filming a boy's

10

genitalia, while the boy was in bed and without any other context, serves no obvious purpose other than to present the child as a sexual object. A jury could also have concluded that Spoor removed the camera from its stand and positioned it under the covers because he intended to create a video that would "elicit a sexual response from the viewer." A-879.

A reasonable juror could also find the Bathroom Video to be lascivious. Spoor positioned the camera beneath the sink of the bathroom so that the pubic region of a boy standing at the toilet would occupy the center of the shot. *See United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) (affirming conviction for production of child pornography based on "placement of the cameras in the bathroom," "focus on videoing and capturing images of [the child's] pubic area," and "the angle of the camera set up"); *United States v. Wells*, 843 F.3d 1251, 1256 (10th Cir. 2016) (affirming conviction for production of child pornography based, in part, on placement of the camera "on the bathroom floor with its lens angled upwards" so that the child's "exposed pubic area [was] near the center of the frame"). A reasonable finder of fact could also have found the setting of the video relevant. Although most typically used as a place to serve biological functions, as our sister circuits have recognized, bathrooms also can be the subject of sexual fantasy. *See Wells*, 843 F.3d at 1256 (citing *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010)). Although, as Spoor points out, the videos do not involve suggestive posing, sex acts, or inappropriate attire, none of these is necessary to child pornography. Rather, as the District Court instructed, whether a video or image is a

11

lascivious exhibition must be decided by the jury based on the overall content of the material.

We are not persuaded by Spoor's analogy between the videos in this case and the picture at issue in *Amirault*, 173 F.3d at 33-34. The photograph in *Amirault* depicted a naked girl, at the beach, buried up to her pubic area in sand. *Id.* at 33. The girl's genitals were not prominently featured in the picture, she was not posed, and the setting was innocuous. Absent any other indicia that the photo was lascivious, the First Circuit vacated the defendant's sentence and held that the picture was not lascivious. By contrast, the videos in this case display the boys' genitals (albeit briefly), involve potentially sexually suggestive locations – unlike a beach, where nudity is to be expected to some degree, *see Doe v. Chamberlin*, 299 F.3d 192, 196 (3d Cir. 2002) – and there was extrinsic evidence of Spoor's intent in making the videos, including his admitted attraction to young boys. For the same reasons, we do not find persuasive Spoor's argument that his videos were simply "voyeuristic" as in *United States v. Steen*, 634 F.3d 822, 828 (5th Cir. 2011) (finding that surreptitiously recorded videos in a tanning salon, not focused on the genitals of the victim, were voyeuristic but not lascivious).

We pause here to address, briefly, the jury instructions, which Spoor does not challenge on appeal. We approved jury instructions incorporating the so-called *Dost* factors in *Rivera*, but noted at the time that they are an imperfect guide for the jury. 546 F.3d at 252. In some cases, the *Dost* factors are perhaps underinclusive. *See United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006) (the *Dost* factors may

12

"inappropriately *limit* the scope of the statutory definition"). In others they are potentially overinclusive.[7] *See Amirault*, 173 F.3d at 34 (expressing concern that the sixth factor is vague and confusing); *see also Steen*, 634 F.3d at 829 (Higginbotham, J., concurring) (expressing concern that the sixth factor invites overreliance on extrinsic evidence of the defendant's intent). With respect to the sixth *Dost* factor, we took note in *Rivera* of the potential that – "if the sixth factor were to focus on the defendant's 'subjective reaction' to the photograph, as opposed to the photograph's 'intended effect,' 'a sexual deviant's quirks could turn a Sears catalog into pornography.'" 546 F.3d at 252 (quoting *Amirault*, 173 F.3d at 34). In light of this concern, the First Circuit and Third Circuit have held that "rather than being a separate substantive inquiry about the photographs," the sixth *Dost* factor "is useful as another way of inquiring into whether any of the other five

---

[7] Other courts have found it possible to define a "lascivious exhibition" without reliance on a list of difficult-to-apply, judicially-created factors. *See United States v. Grimes*, 244 F.3d 375, 381 (5th Cir. 2001) (a photo is a lascivious exhibition if it is a "depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation of the viewer" (quoting *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994))); *but see Rivera*, 546 F.3d at 249 (noting that the term "lascivious" is not "self-defining"). As we held in *Rivera*, consideration of the *Dost* factors is not mandatory, and it is possible to charge a jury without using them. *See United States v. Price*, 775 F.3d 828, 839-40 (7th Cir. 2014) (discouraging use of the *Dost* factors because the statutory text is "clear enough on its face"); *see also Steen*, 634 F.3d at 828 (Higginbotham, J., concurring) ("I write separately to note my misgivings about excessive reliance on the judicially created *Dost* factors that continue to pull courts away from the statutory language of 18 U.S.C. § 2251.").

13

*Dost* factors are met." *United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989); *see also Amirault*, 173 F.3d at 34-35.

We pick up where *Rivera* left off, and clarify that the sixth *Dost* factor – whether the image was designed to elicit a sexual response in the viewer – should be considered by the jury in a child pornography production case only to the extent that it is relevant to the jury's analysis of the five other factors and the objective elements of the image. *See Villard*, 885 F.2d at 125; *Amirault*, 173 F.3d at 34-35; *United States v. Miller*, 829 F.3d 519, 526 & n.3 (7th Cir. 2016) (citing *Villard* and holding that "the subjective intent of the viewer cannot be the *only* consideration in a finding of lascivious[ness]"); *see also United States v. Brown*, 579 F.3d 672, 683-84 (6th Cir. 2009) (limiting extrinsic evidence of intent to the "limited context" in which the images were taken to prevent overreliance on the filmmaker's subjective intent). Whether a video is, objectively, a "lascivious exhibition" depends on the content of the video itself and not on the sexual predilection of its creator. It follows that the jury may not find a film to be a "lascivious exhibition" – and therefore sexually explicit – based *solely* on the defendant's intent in creating the video.[8] *Miller*, 829 F.3d at 526 n.3.

To be sure, the subjective intent of the photographer can be relevant to whether a video or photograph is child pornography. As the Supreme Court has explained, the child pornography laws are

---

[8] We do not address whether such a defendant, intending to create child pornography, but who is ultimately unsuccessful, might be charged with attempt. *See United States v. Hodge*, 805 F.3d 675, 680 (6th Cir. 2015).

directed at preventing the "psychological, emotional, and mental" harm to a child of being used as a sexual object, to gratify the lust of another – either the viewer or the photographer. *See New York v. Ferber*, 458 U.S. 747, 775 (1982) (O'Connor, J., concurring). But overreliance on the intent of the photographer, and his idiosyncratic desires, raises constitutional concerns regarding criminalization of expressive conduct and creates a risk that a defendant could be convicted for being sexually attracted to children without regard to whether the material produced is, objectively, child pornography. *See id*. at 764 ("There are, of course, limits on the category of child pornography . . . . As with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined" and "suitably limited and described."); *Brown*, 579 F.3d at 683.

Limiting the role of the sixth *Dost* factor in this manner focuses the jury on the objective elements of the photograph and reduces the risk that a jury will criminalize otherwise protected speech based solely on evidence of a defendant's disturbing sexual interest in children.[9] We leave it to the district courts in the first instance to

---

[9] As we noted above, Spoor has not objected on appeal to the jury instructions, and he requested the District Court to charge the jury on the *Dost* factors. *See United States v. Spoor*, No. 13-CR-6059 (CJS), Dkt. 86 at 3 (W.D.N.Y. Dec. 29, 2015) (requesting *Dost* factors instruction). In the District Court, Spoor requested that the jury be charged that "more than one [*Dost*] factor must be present." *Id.* at 3. That is not a correct statement of the law, and it was properly rejected by the District Court. (A jury could, for example, conclude that a picture was lascivious because it displayed prominently the genitals of a child or because the child was posed seductively, notwithstanding that none of the other *Dost* factors was satisfied.) What we hold today is that it is improper for a jury to find that an

15

consider whether any additional gloss on the *Dost* factors is appropriate to clarify for the jury the limited role and import of the sixth factor. At a minimum, and particularly where evidence is admitted pursuant to Rule 414, district courts should consider charging the jury expressly that the defendant's subjective intent alone is not sufficient to find the content lascivious.

Spoor also challenges the sufficiency of the Government's evidence regarding the timing of the production of the videos. The grand jury charged that Spoor produced the videos in April and July 2012. According to Spoor, however, the testimony at trial established that the children were "around seven or eight" in the Camper Video and "approximately eight or nine" in the Bathroom Video, which suggests the videos were produced well before 2012. A-689, -704, -735. A difference of several years between the dates alleged in the indictment and the Government's proof at trial, Spoor argues, amounts to a constructive amendment of the charges against him, requiring a new trial. *See United States v. Patino*, 962 F.2d 263, 265-66

---

image is lascivious based *solely* on the fact that the image is intended to elicit a sexual response from the viewer; the sixth *Dost* factor is relevant only to the extent it bears on whether the other five factors are satisfied. Because Spoor did not raise this argument below (or on appeal) we review the jury instructions for clear error. *See* Fed. R. Crim. P. 30(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. . . . Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."). Read as a whole, and applied to the videos in this case, the jury instructions were not clearly erroneous. *See United States v. Olano*, 507 U.S. 725, 734 (1993).

16

(2d Cir. 1992) ("Constructive amendment of an indictment is a *per se* violation of the grand jury clause of the Fifth Amendment.").

Although Spoor characterizes his claim as whether there was a constructive amendment, his argument is more appropriately characterized as a claim of variance. "To prevail on a constructive amendment claim, a defendant must demonstrate that 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)) (emphasis in *D'Amelio*); *see also id.* at 417 (describing the issue as whether the defendant had notice of the core of criminality to be proven at trial). By contrast, "variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 n.5 (2d Cir. 1998)). Spoor does not contend that the possible difference in dates goes to an essential element of the crime of production of child pornography or that the core of the alleged criminality – the production of sexually explicit videos involving prepubescent boys – would be any different had it occurred in 2010 rather than 2012.

Nor are we persuaded that there was a variance in this case. The Government presented sufficient evidence for the jury to conclude that

17

the videos were produced "in or about" April and July 2012, as charged in the indictment. Viewing the videos, the jury was entitled to find that the boys in the Camper Video were approximately nine and ten years old and that the boys in the Bathroom Video were approximately nine and five years old – thereby establishing that the videos were produced in 2012. There was also evidence at trial that the Camper Video was made around the time of Spoor's son's tenth birthday party, which was in June 2012. Moreover, neither of the mothers testified definitively. Rather, based on their review of the videos, the mothers testified that their children appeared to them to be "approximately eight or nine" and "around seven or eight." A-689, -704. As the District Court explained correctly, any inconsistency between the Government's allegations and the testimony of the boys' mothers was relevant to the jury's consideration of the mothers' credibility but did not impermissibly broaden the charges against Spoor. *See United States v. Josephberg*, 562 F.3d 478, 494 (2d Cir. 2009) ("[W]hen testimonial inconsistencies are revealed on cross-examination, the 'jury [i]s entitled to weigh the evidence and decide the credibility issues for itself. . . .'" (quoting *United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir. 2001))).

Spoor has also failed to persuade us that any difference in dates was prejudicial. A difference between the Government's allegations, as contained in the indictment, and the evidence at trial is grounds for a new trial only if the variance is prejudicial to the defendant. *See United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987). A variance is not prejudicial if it "is not of a character that could have misled the

18

defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." *Salmonese*, 352 F.3d at 621-22 (quoting *United States v. Mucciante*, 21 F.3d 1228, 1236 (2d Cir. 1994)); *see also United States v. Heimann*, 705 F.2d 662, 666 (2d Cir. 1983) ("Because proof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment, this court has consistently permitted significant flexibility in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at trial."). The year in which the videos were made was of little practical relevance at trial. Spoor did not dispute making the videos or that the children depicted in the videos were minors at the time. His argument to the jury was that the videos were not lascivious and that he lacked the intent to make child pornography because his intent was to show "the boys being silly." A-805. Whether the videos were made in 2010 (based on the mothers' testimony) or 2012 (as alleged by the Government) was irrelevant to these arguments. And Spoor has not identified any argument he would have made but did not make in reliance on the Government's allegation that the videos were produced in mid-2012. To the contrary, Spoor's counsel was aware of the potential discrepancy in the Government's proof, cross-examined the mothers on the point, and argued the issue to the jury during summation. Finally, there is no suggestion that Spoor is at risk of being charged again for the same offense.

19

**B.**

Next is Spoor's objection to the admissibility of his prior state conviction for a Criminal Sexual Act in the First Degree. On appeal, Spoor concedes that his prior conviction was admissible as a crime of child molestation pursuant to Rule 414. He challenges the District Court's ruling, rather, on the grounds that the conviction was not relevant to any issue in the case and that it should, therefore, have been excluded pursuant to Rule 403 because its probative value was outweighed by the potential for unfair prejudice.

We review the District Court's decision to admit evidence for abuse of discretion. *See Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997); *see also United States v. O'Connor*, 650 F.3d 839, 853 (2d Cir. 2011) (reviewing district court's decision to admit evidence pursuant to Rule 414 for abuse of discretion). An evidentiary error is grounds for reversal only if it affects a "substantial right" – that is, the error "had a 'substantial and injurious effect or influence' on the jury's verdict." *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quoting *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003)) (internal citation omitted). We will sustain a district court's decision to admit evidence in the face of a Rule 403 objection "so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice," and will reverse only if the district court's decision is "arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Rule 414 provides that in criminal cases involving accusations of child molestation, the district court may "admit evidence that the defendant committed any other child molestation" for "any matter to which it is relevant." Fed. R. Evid. 414(a). In our first encounter with Rule 414 in *United States v. Larson*, 112 F.3d 600 (2d Cir. 1997), we explained that "Rule 414 permits evidence of other instances of child molestation as proof of, *inter alia*, a 'propensity' of the defendant to commit child molestation offenses but that '[i]n other respects, the general standards of the rules of evidence will continue to apply, . . . .'" *Id.* at 604 (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (Statement of Sen. Dole); 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (Statement of Rep. Molinari)). More recently we explained that Rule 413 (a companion to Rule 414) reflects an exception in prosecutions for sex crimes to the common law practice of excluding propensity evidence. *United States v. Schaffer*, 851 F.3d 166, 178-79 (2d Cir. 2017).

Although Rule 414 modifies the ban on character evidence otherwise applicable under Rule 404, it does not follow that propensity evidence relative to child molestation is always admissible. *See Larson*, 112 F.3d at 604-05 (concluding that Rule 403 applies to character evidence admissible under Rule 414). The ban on character evidence under Rule 404 is "merely an application of Rule 403 to a recurring issue." *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998) (citing *Old Chief*, 519 U.S. at 181-82). Rule 414 reflects a congressional judgment that such a blanket rule is inappropriate when dealing with child molestation offenses, but it does not require the district courts to

21

evaluate such evidence with a "thumb on the scale in favor of admissibility."[10] *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 155-56 (3d Cir. 2000). It is more accurate to say that Rule 414 affects the district court's analysis under Rule 403 because it alters the category of permissible inferences available to the jury. *United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009). Whereas in other cases it is impermissible, and unfairly prejudicial, for the jury to infer a propensity to commit the charged crime from evidence of prior, similar acts, Rule 414 makes that a permissible inference. *Id.* The district court retains discretion, however, to determine the probative value of this inference and to weigh whether the prior act evidence will be unfairly prejudicial. In determining the probative value of prior act evidence, the district court should consider such factors as: "(1) 'the similarity of the prior acts to the acts charged,' (2) the 'closeness in time of the prior acts to the acts charged,' (3) 'the frequency of the prior acts,' (4) the 'presence or lack of intervening circumstances,' and (5) 'the necessity of the evidence

---

[10] In concluding that Rule 414 does not circumscribe the district court's discretion under Rule 403 we join the majority of circuits to have considered this issue. *See Guardia*, 135 F.3d at 1331; *United States v. Loughry*, 660 F.3d 965, 969-70 (7th Cir. 2011); *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 155-56 (3d Cir. 2000); *but see United States v. Withorn*, 204 F.3d 790, 794 (8th Cir. 2000) (district courts should apply Rule 403 to evidence of prior acts of child molestation with deference so as to allow Rule 414 to have its intended effect). The Fourth Circuit's position is possibly unclear: in *United States v. Stamper*, the court cited approvingly to the decision in *Guardia* but also suggested that the Court should review Rule 414 evidence with the benefit of a presumption in favor of admissibility. 106 F. App'x 833, 835 (4th Cir. 2004). To the extent the Fourth Circuit has adopted a more deferential standard of review, we respectfully disagree for the reasons stated above.

beyond the testimonies already offered at trial.'" *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001) (quoting *Guardia*, 135 F.3d at 1331). The district court should also consider the potential for unfair prejudice, including the possibility that prior act evidence will lead the jury to convict out of passion or bias or because they believe the defendant is a bad person deserving of punishment – a particular risk with this sort of evidence.[11] *See Rogers*, 587 F.3d at 823.

The District Court's decision to admit Spoor's prior conviction was consistent with these principles. In arguing to the contrary, Spoor proceeds from the incorrect premise that his sexual attraction to minor boys was irrelevant to the charges against him. As to the production counts, evidence that Spoor had, relatively recently, abused boys who were similar in age to the boys in the videos was relevant to show his attraction to children, thus providing evidence of his motive to make pornography. Additionally, that evidence was relevant to the sixth *Dost* factor, because it tends to show the videos were intended or designed to elicit a sexual response in the viewer. *See United States v. Russell*, 662 F.3d 831, 847 (7th Cir. 2011) ("Prior instances of sexual misconduct with a child victim . . . may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children." (quoting *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006))). Spoor's sexual interest in children was also relevant to the possession counts. Spoor argued that the hard drives were not his and

---

[11] In articulating these factors, we do not purport to restrict the district court's analysis of other potentially relevant factors under Rule 403.

that another person with access to the drives had downloaded the child pornography. *See United States v. Emmert*, 825 F.3d 906, 909 (8th Cir. 2016) ("[E]vidence that [the defendant] sexually abused [two girls] is probative of [his] interest in underage girls. . . . In this way, [the defendant]'s prior conduct shows he had a propensity for exploiting young girls and connects him to the pornographic images found on his hard drive."). The fact that Spoor had recently been convicted of molesting children makes it less likely that, by sheer coincidence, he also unwittingly possessed child pornography downloaded by others.

The District Court properly balanced the probative value of the Government's prior act evidence against its potential prejudicial effect. To recap, in advance of trial, the Government moved to admit testimony from three individuals who asserted Spoor had sexually abused them or had taken pictures of them naked when they were children; Spoor's admission that he molested two seven-year-old boys in 2010; and Spoor's 2013 conviction (based on his guilty plea) for Criminal Sexual Act in the First Degree. Of this evidence, the District Court admitted only a sanitized version of Spoor's 2013 conviction and excluded Spoor's highly inculpatory statements and the testimony of Spoor's alleged victims. In so doing, the District Court excluded potentially cumulative evidence of the same prior bad acts and limited the potential for graphic and potentially inflammatory testimony from Spoor's alleged victims. The District Court's ruling also limited the potential for a trial within a trial regarding Spoor's prior bad conduct.

In short, the District Court did not abuse its discretion in admitting the challenged evidence.

24

## C.

Last, we come to Spoor's argument that his sentence of 360 months of incarceration and fifteen years of supervised release is substantively unreasonable. Specifically, Spoor contends that his sentence, in his words a "*de facto* life sentence," is greater than necessary to accomplish the goals of sentencing under 18 U.S.C. § 3553(a) and fails to account for his advanced age and differences in "degrees of repugnance" among child pornography crimes. Had the District Court sentenced Spoor to the statutory minimum of 15 years of imprisonment, he would be approximately 70 at the time of his release, at which point, he contends, he is unlikely to recidivate. And Spoor contends that the videos he produced, although admittedly unacceptable, are less deserving of punishment than the sort of child pornography that involves minors engaged in sexual acts or lewd posing.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007). A defendant challenging the substantive reasonableness of his or her sentence bears a "heavy burden because our review of a sentence for substantive reasonableness is particularly deferential." *See United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). We have previously explained that a sentence is substantively unreasonable only if the district court's decision "cannot be located within the range of permissible decisions." *United States v Rigas*, 583 F.3d 108, 124 (2d Cir. 2009) (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)) (internal quotation marks and additional citation

25

omitted). We may consider "whether a factor relied on by a sentencing court can bear the weight assigned to it . . . under the totality of circumstances in the case," *Cavera*, 550 F.3d at 191, but we will reverse the district court's decision only if the sentence imposed amounts to a "manifest injustice or shock[s] the conscience," *Rigas*, 583 F.3d at 124 (internal quotation marks omitted); *see also id.* at 123 (A sentence is substantively unreasonable if it "damage[s] the administration of justice because [it is] shockingly high, shockingly low, or otherwise unsupportable as a matter of law.").

This is not the rare case in which we find the sentence to be unreasonable. We have never decided that a sentence within the Guidelines is presumptively reasonable, but the fact that the District Court sentenced Spoor within the Guidelines – at the bottom of the range, in fact – is relevant to our analysis. *See Gall*, 552 U.S. at 51 (noting that the appellate court should consider, among other things, "the extent of any variance from the Guidelines range"). In rejecting Spoor's argument for a below-Guidelines sentence, the District Court explained that it did not view the videos as being appreciably less deserving of punishment than other examples of child pornography. The District Court went on to explain that it found Spoor's conduct to be a "manifestation of continuing sexual exploitation," SPA-38, including of his own child, and determined that a sentence of 360 months was necessary because "anything less might subject children, even perhaps at your advanced age, to some danger." SPA-40.

The District Court's analysis was not error. The record supports that court's view that a sentence of 360 months of incarceration was

26

necessary in light of the "nature and circumstances of the offense," and to "protect the public from further crimes." 18 U.S.C. § 3553(a).[12] In addition to the production and possession offenses that were the basis for Spoor's convictions, the record before the District Court included Spoor's 2013 state conviction, his confession that he had molested two other seven-year old boys, and the allegations of several other individuals that Spoor had sexually assaulted them when they were children – a pattern of abuse that amply supports the District Court's desire to incapacitate Spoor. The District Court's sentence was calibrated so that Spoor will not be released until he is approximately 80, an age at which the District Court believed he is unlikely to reoffend. As such, this case is unlike *United States v. Dorvee*, cited by Spoor, in which the district court extrapolated a likelihood the defendant would assault children in the future that was unsupported by the record and despite the defendant's lack of criminal history.[13]

[12] We have previously noted that the line between "substantive" and "procedural" reasonableness is not always a bright one. This case demonstrates the point. The District Court did not explain why it rejected Spoor's argument that the videos he produced were less deserving of punishment than many (if not most) examples of child pornography. Nor did it explain why it believed it was necessary to incapacitate Spoor until he was 80 years old rather than 70 years old. Although the District Court's limited explanation of the sentence does not amount to a procedural error, the brevity of the Court's explanation for the sentence imposed makes our review of the substantive reasonableness of the sentence more difficult.

[13] In *Dorvee*, we expressed concern that the child pornography guideline, U.S.S.G. § 2G2.2, does not adequately distinguish between mere possession offenses and relatively more serious crimes, such as distribution and production of child pornography, and tends to wash out differences in criminal history. *See* 616 F.3d at 187. We have similar concerns regarding the application of U.S.S.G. § 4B1.5 to defendants like Spoor. Pursuant to that section, Spoor was placed in criminal

27

616 F.3d 174, 183-84 (2d Cir. 2010). The District Court also considered the fact that Spoor had familial ties to some of his victims, an abuse of trust that is quite clearly an aggravating factor. Confronted with this record, we cannot say that the District Court placed undue weight on either the need to protect the public or the seriousness of Spoor's conduct.

## III.   CONCLUSION

In sum, we reject Spoor's challenges to the sufficiency of the evidence; to the District Court's evidentiary rulings; and to the reasonableness of his sentence.

For the foregoing reasons, we **AFFIRM** the District Court's judgment.

---

history category V because he had previously been convicted of a "sex offense." Section 4B1.5 reflects a judgment that sex offenders who recidivate are particularly dangerous. But Section 4B1.5 does not require that the defendant's predicate conviction precede the conduct that gave rise to the instant conviction. Thus, while Spoor had been previously convicted of a sex offense and sentenced to five years imprisonment at the time of sentencing in this case, his offense conduct in the federal case occurred before his arrest in the state case. Spoor was not a recidivist, as the rationale underlying Section 4B1.5 appears to assume. Like Section 2G2.2, Section 4B1.5 can lead to draconian sentences which are not always consistent with the goals of sentencing. Careful application of the Guidelines as they relate to sex offenses and independent analysis of the Section 3553(a) factors is necessary to ensure a reasonable sentence that is not greater than necessary to achieve the goals of sentencing. In this particular case, the required increase in criminal history was of no moment, however. Because Spoor's offense level was 42, his Guidelines range would have been 360 months to life months whether he was in criminal history category II or category V.