18-2200-cr
*United States v. Songkram Roy Sahachaisere*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of December, two thousand nineteen.

PRESENT:
>JOHN M. WALKER, JR.,
>DENNY CHIN,
>RICHARD J. SULLIVAN,
>>*Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
>*Appellee*,

>v.                                18-2200-cr

SANDY WINICK, aka JERRY SARRANO,
aka JOHN PETER SMITH, aka ABDIEL
VERGARA, aka ROBIN CHEER, aka GLEN
FORMAN, aka KYLE BENDFORD, aka
STEPHEN THOMPSON, GREGORY CURRY,
KOLT CURRY, aka MICHAEL EAST,
GREGORY ELLIS, GARY KERSHNER, JOSEPH
MANFREDONIA, aka MAURIZIO, aka
RICHARD, aka PANAMA JOE, aka

GUILLERMO MENDOZA, CORT POYNER,
WILLIAM SEALS,

*Defendants,*

SONGKRAM ROY SAHACHAISERE,

*Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                    ANDREY SPEKTOR, Assistant United States
                                 Attorney (Mark Bini, Amy Busa, Tyler Smith,
                                 Assistant United States Attorneys, *on the brief*),
                                 *for* Richard P. Donoghue, United States
                                 Attorney for the Eastern District of New York,
                                 Brooklyn, New York.

FOR DEFENDANT-APPELLANT:          JOEL M. STEIN, Law Office of Joel M. Stein,
                                 New York, New York.

Appeal from the United States District Court for the Eastern District of

New York (Vitaliano, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Songkram Roy Sahachaisere appeals from a

judgment entered July 20, 2018, following a jury trial, convicting him of (1) conspiracy

to commit securities fraud, in violation of 18 U.S.C. § 371, (2) conspiracy to commit wire

fraud, in violation of 18 U.S.C. § 1349, (3) two counts of wire fraud, in violation of 18

U.S.C. § 1343, and (4) securities fraud, in violation of 15 U.S.C. §§ 78(b) and 78ff.  The

district court sentenced Sahachaisere principally to twenty-seven months'

2

imprisonment and three years' supervised release, and ordered him to pay $778,444.78 in restitution and a $500 special assessment.

On appeal, Sahachaisere argues that the district court abused its discretion in admitting inadmissible hearsay and lay opinion testimony at trial. In its brief on appeal, the government concedes that it "improperly sought the admission of certain . . . testimony," Gov't Br. at 22, but argues that any evidentiary errors were harmless. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Because Sahachaisere appeals a judgment of conviction following a jury trial, we summarize the evidence adduced in the light most favorable to the government. *See United States v. Thompson*, 896 F.3d 155, 159 (2d Cir. 2018). Sahachaisere, along with other conspirators, participated in a scheme to manipulate the price and volume of securities by utilizing deceptive trading practices and press releases to defraud investors. At trial, the government presented substantial evidence through the testimony of two accomplice witnesses -- Mohammed Dolah and Joseph Manfredonia -- including emails, recorded conversations, and wire intercepts. The two accomplice witnesses linked Sahachaisere to the securities fraud scheme, and numerous emails and call transcripts corroborated their testimony.

In addition, Federal Bureau of Investigation ("FBI") Special Agent Kurt Dengler testified that the FBI executed search warrants and intercepted

3

communications through wiretaps. Over Sahachaisere's objections, Dengler also testified that the evidence revealed a "massive international scheme" involving dozens of individuals in multiple countries "engaged in various securities fraud schemes." App'x at 60. Dengler described the "types of participants" in the securities scheme, including control persons, promoters, and middlemen. App'x at 60. Dengler identified Sahachaisere as a promoter. Sahachaisere objected to Dengler's characterization of the evidence. In response, the government explained that Dengler's testimony was "case presentation" summarizing the admissible evidence. App'x at 64-65. The district court overruled Sahachaisere's objection.

Dengler also described the internal structure and operations of Moneyline Brokers ("Moneyline") -- an offshore brokerage used in the criminal scheme. Dengler explained how customers with Moneyline accounts could deposit stocks into those accounts and then instruct Moneyline to sell those stocks without disclosing the customers' names. Sahachaisere also objected to this testimony. His objection was overruled.

In summation, the government reviewed the admissible evidence supporting Sahachaisere's conviction: the testimony of accomplice witnesses implicating Sahachaisere in the scheme, calls and recordings among the conspirators (including Sahachaisere), Sahachaisere's emails, and information establishing that the press releases were false. The government also referred to various objectionable

4

portions of Dengler's testimony, including his efforts to find information corroborating the press releases, and the government's undercover purchase of stocks. A jury convicted Sahachaisere on November 9, 2015.

Following his conviction, Sahachaisere moved for a new trial under Fed. R. Crim. P. 33, arguing that Dengler's testimony regarding Sahachaisere's role in the scheme and Moneyline's structure was improperly admitted. The district court denied Sahachaisere's motion, holding that "[n]one of the testimony offered by Special Agent Dengler . . . strayed outside the boundaries set by circuit precedent." Gov't App'x at 402. The district court sentenced Sahachaisere on July 20, 2018. This appeal followed.

## *STANDARD OF REVIEW*

We review the district court's decision to admit evidence for abuse of discretion, *United States v. Spoor*, 904 F.3d 141, 153 (2d Cir. 2018), and we will reverse only if an error affects a "substantial right." *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quoting Fed. R. Evid. 103(a)). "An evidentiary error affects substantial rights if it had a 'substantial and injurious effect or influence on the jury's verdict." *Id.* (internal quotation marks and citation omitted).

## *DISCUSSION*

As noted, the government concedes that portions of Dengler's testimony included inadmissible hearsay or constituted inadmissible lay opinion. Specifically, Dengler's testimony regarding Moneyline's structure and operations was inadmissible

5

hearsay as he was conveying information that he had learned from debriefing cooperators and reviewing records. Fed. R. Evid. 801(c)(1). Moreover, his characterization of Sahachaisere's role in the criminal scheme constituted inadmissible lay opinion testimony.[1] Despite conceding that these evidentiary errors occurred, the government argues that any errors were harmless given the substantial, admissible evidence provided at trial.

It is troubling when, as here, the government fights hard for the admission of improper evidence, succeeds, obtains a conviction based in part on that evidence, and then acknowledges on appeal that the evidence should not have been admitted in the first place, while arguing that the conviction should be upheld because the errors were harmless. We would expect the government to do better. Nevertheless, given the overwhelming strength of the government's admissible evidence, including recordings of Sahachaisere's own incriminating statements, we agree that the evidentiary errors were harmless.

---

[1] *See, e.g., United States v. Grinage*, 390 F.3d 746, 751 (2d Cir. 2004) ("[T]he agent's testimony as to his interpretations of the calls went beyond permissible lay opinion testimony under Rule 701(b) because, rather than being helpful to the jury, it usurped the jury's function. Moreover, . . . the agent was presented to the jury with an aura of expertise and authority which increased the risk that the jury would be swayed by his testimony, rather than rely on its own interpretation of the calls.").

*I.*     *Admissible Evidence*

The government provided substantial, admissible evidence supporting Sahachaisere's conviction in the form of: accomplice witness testimony implicating Sahachaisere, recordings of calls among the conspirators (including Sahachaisere), Sahachaisere's emails, and information establishing that the press releases were false. The evidence confirmed that Dengler's testimony characterizing Sahachaisere's role in the scheme was accurate and cumulative: Dolah testified that Sahachaisere participated in the fraudulent scheme. Emails and call recordings show that Sahachaisere recruited other promoters. Other recorded conversations between Dolah and Sahachaisere show Sahachaisere manipulating stock prices and trading volumes.

With respect to Moneyline's internal structure and operations, Dolah's and Manfredonia's testimony also confirmed that Dengler's testimony about Moneyline was accurate and cumulative of other evidence properly admitted at trial. Dolah and Manfredonia both testified that Moneyline was an offshore brokerage firm. Manfredonia also testified that a "big advantage" of using Moneyline was that "every trade that was made was made in Moneyline's name. So nothing appeared on any trades in the United States with my corporate name . . . ." Gov't App'x at 362. This

testimony is consistent with Dengler's testimony regarding Moneyline's structure and operations.[2]

## II. Harmless Error

We conclude that the district court's evidentiary errors were harmless. *See* Fed. R. Crim. P. 52(a). We will "uphold a verdict in the face of an evidentiary error" when it is "highly probable that the error did not affect the verdict." *United States v. Dukagjini*, 326 F.3d 45, 61 (2d Cir. 2003) (internal quotation marks and citation omitted). In conducting this inquiry, we consider: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *United States v. Kaplan*, 490 F.3d 110, 123 (2d Cir. 2007) (citation omitted).

Here, we agree with the district court that the government provided "comprehensive and overwhelmingly incriminating" evidence at trial supporting Sahachaisere's conviction. Gov't App'x at 387. As described above, the government offered substantial admissible evidence, including the testimony of accomplice witnesses linking Sahachaisere to the scheme, incriminating calls, recordings, emails,

---

[2] Moreover, this Court is not persuaded by Sahachaisere's argument regarding the government's lack of production of the Moneyline records. The government was not required to submit these documents into evidence. In any event, Dengler's inadmissible hearsay testimony regarding Moneyline's structure and operations was cumulative of and consistent with the testimony of accomplice witnesses.

8

and evidence establishing that the press releases were false. The inadmissible portions of Dengler's testimony were cumulative of other properly admitted evidence. Further, while the government did refer to some of the improper evidence in summation, it relied heavily on admissible evidence, including the recordings and the testimony of the two cooperators. *See* Gov't App'x at 374 ("And you remember Moneyline. We heard about it from Mo Dolah, from Joseph Manfredonia.").

For these reasons, this case falls squarely within our precedent finding evidentiary error harmless. *See Garcia*, 413 F.3d at 217-18 (finding harmless erroneous admission of agent's lay opinion describing defendant's role in crime when government's summation chiefly focused on admissible evidence during summation, which was overwhelming based on testimony of accomplice witness); *Dukagjini*, 326 F.3d at 62 (finding harmless erroneous admission during case agent's testimony of hearsay as other cooperators "testified extensively" regarding defendant's participation in charged conspiracy). Accordingly, any error in admitting portions of Dengler's testimony was harmless. We conclude that it is "highly probable that the error did not affect the verdict," *Dukagjini*, 326 F.3d at 61 (internal quotation marks and citation omitted), and the district court did not abuse its discretion in denying Sahachaisere's motion for a new trial.[3]

---

[3] Finally, we find no need to address Sahachaisere's good faith defense argument because this argument was already presented to the jury. The district court instructed the jury on the

9

\* \* \*

We have considered Sahachaisere's remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

<div style="margin-left:40%">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

</div>

---

good faith defense and there was ample evidence in the record demonstrating Sahachaisere's lack of good faith.