*United States v. Thompson*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of July, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> *Circuit Judges,*
> MARK A. BARNETT,
> *Judge.*\*

---

UNITED STATES OF AMERICA,

      *Appellee,*

      v.                                                            No. 23-6007

DWAYNE THOMPSON,

      *Defendant-Appellant.*†

---

\* Chief Judge Mark A. Barnett, of the United States Court of International Trade, sitting by designation.

† The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendant-Appellant:                    Elizabeth M. Johnson, New York, NY.

For Appellee:                    Daniel George, Conor M. Reardon, Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 27, 2022 judgment of the district court is **AFFIRMED**.

Dwayne Thompson appeals from the district court's judgment following his conviction after a bench trial on one count of conspiracy to distribute and to possess with intent to distribute heroin, and one count of attempting to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846.  The district court sentenced Thompson to 156 months' imprisonment on each count, to be served concurrently, which was well below the range of 235 to 293 months prescribed by the United States Sentencing Guidelines ("U.S.S.G.").  On appeal, Thompson argues that his

sentence was procedurally and substantively unreasonable. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

Thompson first argues that his sentence was procedurally unreasonable because the district court erred in increasing his offense level by two levels under the drug-premises enhancement of U.S.S.G. § 2D1.1(b)(12), which applies where a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Thompson objected to the drug-premises enhancement at sentencing, and so our review is for abuse of discretion. *See United States v. Sims*, 92 F.4th 115, 122 (2d Cir. 2024). "The abuse-of-discretion standard incorporates *de novo* review of questions of law (including interpretation of the Guidelines) and clear-error review of questions of fact." *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008).

Determining whether section 2D1.1(b)(12) applies is a "fact-intensive" inquiry requiring consideration of the totality of the circumstances, *United States v. Vinales*, 78 F.4th 550, 552–53 (2d Cir. 2023), and a "district court's factual findings at sentencing need be supported only by a preponderance of the evidence," *United States v. Norman*, 776 F.3d 67, 76 (2d Cir. 2015). For purposes of section 2D1.1(b)(12), a premises can be a "a building, room, or enclosure." U.S.S.G.

§ 2D1.1 cmt. n.17. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained" so long as it was "one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.*; *see United States v. Esteras*, 102 F.4th 98, 105 (2d Cir. 2024) (holding that a single premises can be primarily used as both a residence and a narcotics distribution point).

The district court did not abuse its discretion in applying the section 2D1.1(b)(12) enhancement when calculating Thompson's offense level. The record shows that Thompson and his coconspirator Jose Carrasquillo opened a business called "Blackout Tints" several months before their arrests, operating out of a building in Wethersfield, Connecticut. The building was not just for their nascent car detailing business – they also used it for their more-established drug-trafficking operations. Specifically, as the fact-finder at Thompson's bench trial, the district court found pursuant to Federal Rule of Criminal Procedure 23(c) that "Thompson had a heroin source in California; that Thompson and Carrasquillo pooled money to purchase heroin from Thompson's source; *that the two of them stored the heroin at Blackout Tints* and at Carrasquillo's house; that Carrasquillo was responsible for distributing it to customers and [that] Thompson was responsible

for sending payments to the source." Thompson App'x at 70–71 (emphasis added).

At sentencing, the district court adopted the factual findings of the presence report, which detailed how Thompson and Carrasquillo maintained exclusive access to the office space at Blackout Tints, where an employee of Blackout Tints had built secret compartments to store narcotics. In response to Thompson's objection to the drug-premises enhancement, the district court specifically emphasized the fact that "only Mr. Thompson and Mr. Carrasquillo had access and possessed keys to the office area which had the secret compartments to build and store narcotics." Thompson App'x at 123. The presence report further noted that, on the day of the planned three-kilogram transaction, Thompson, Carrasquillo, and other coconspirators held a pre-transaction meeting at Blackout Tints.

All of these factual findings were well supported by testimony at trial, which the district court was free to credit. *See Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985). The district court heard testimony that Thompson knew about the secret compartments in the Blackout Tints office, which were designed for the purpose of storing drugs imported from out of state. The district court

heard further testimony that only Carrasquillo and Thompson had keys to the office, which they kept locked whenever they were not present, and where they also stored a handgun for security – the same handgun Thompson brought with him to the attempted drug transaction that ended with his arrest. Additionally, the district court heard testimony that Thompson helped Carrasquillo cut the heroin they purchased, that scales were kept at Blackout Tints, and that the heroin packaging occurred at Blackout Tints. While Thompson insists that any prior narcotics operations at Blackout Tints are unconnected to the attempted three-kilogram transaction for which he was convicted, it strains credulity to suggest that Thompson and Carrasquillo had stopped using Blackout Tints for their heroin trafficking at the time of the planned three-kilogram transaction. Indeed, the district court was shown surveillance footage from the day of that transaction, which showed Carrasquillo, Thompson, and other coconspirators conducting their pre-transaction rendezvous at Blackout Tints.

Given this record, we cannot say that the district court abused its discretion in concluding that Thompson maintained a premises – Blackout Tints – for which "one of [his] primary or principal uses" was manufacturing or distributing a controlled substance. U.S.S.G. § 2D1.1 cmt. n.17.

Next, Thompson argues that his sentence was substantively unreasonable. We review a sentence's substantive reasonableness under the abuse of discretion standard. *See United States v. Spoor*, 904 F.3d 141, 156 (2d Cir. 2018). "A defendant challenging the substantive reasonableness of his or her sentence bears a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential." *Id.* (internal quotation marks omitted). A sentence is substantively unreasonable when it would "damage the administration of justice" because it is "shockingly high . . . or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). Because a Guidelines sentence will be substantively reasonable in "the overwhelming majority of cases," it is "difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (internal quotation marks omitted).

Thompson argues that his below-Guidelines sentence was substantively unreasonable in light of his personal circumstances, including his lack of criminal history, his service in the National Guard, his lawful employment, his support for his family, and the fact that the "crime of conviction was one that involved no actual drugs or danger to the community because the alleged seller of the drugs

7

was in fact an informant." Thompson Br. at 13–14. But the particular weight given to mitigating factors "is a matter firmly committed to the discretion of the sentencing judge," and we see no abuse of that discretion here. *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted). The record reflects that the district court carefully weighed the factors under 18 U.S.C. § 3553(a), choosing a well-below-Guidelines sentence after balancing the severity of Thompson's offense, which included bringing a handgun to a drug transaction, with his personal circumstances. The district court specifically noted that the offense of conviction was Thompson's "first offense," that he had "served in the National Guard[, which] sa[id] something very positive about [him]," and that Thompson had been a supportive father. Thompson App'x at 145; PSR ¶¶ 62–64. But the district court was clearly justified in considering the "very substantial quantity of heroin" involved in the conspiracy,[3] "the impact that that quantity of drugs [would have had] on the community" and "the families of people who are addicted to heroin," "[t]he presence of the gun" at the transaction

---

[3] The trial testimony made clear, and Thompson does not now dispute, that Thompson was "not just" "involved in . . . one isolated incident but [had] a longstanding drug relationship with Mr. Carrasquillo[] involving the shipments of substantial quantities of heroin from California to Connecticut[,] and that Mr. Thompson used his businesses to help facilitate that drug activity." Thompson App'x at 136.

on the day of Thompson's arrest, and the fact that Thompson perjured himself at trial, threatening "the integrity of court proceedings." Thompson App'x at 145–46. Reviewing for abuse of discretion, we cannot say that the district court's below-Guidelines sentence in this case was substantively unreasonable. *See United States v. Pope*, 554 F.3d 240, 247 (2d Cir. 2009) ("[W]e will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." (internal quotation marks omitted)).

We have considered Thompson's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court