# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed June 28, 2022

No. 19-3027

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES HILLIE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00030-1)

———

On Petition for Rehearing En Banc

———

Before: SRINIVASAN, *Chief Judge*; HENDERSON****, ROGERS,
TATEL, MILLETT, PILLARD, WILKINS**, KATSAS***, RAO****,
WALKER****, and JACKSON*, *Circuit Judges*

## **O R D E R**

Appellee's petition for rehearing en banc and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing, it is

2

**ORDERED** that the petition be denied.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Michael C. McGrail
Deputy Clerk

\* Circuit Judge Jackson did not participate in this matter.

\*\* A statement by Circuit Judge Wilkins, concurring in the denial of rehearing en banc, is attached.

\*\*\* A statement by Circuit Judge Katsas, concurring in the denial of rehearing en banc, is attached.

\*\*\*\* Circuit Judges Henderson, Rao, and Walker would grant the petition for rehearing en banc. A statement by Circuit Judge Rao, joined by Circuit Judges Henderson and Walker, dissenting from the denial of rehearing en banc, is attached.

1

WILKINS, *Circuit Judge*, concurring in the denial of rehearing en banc:  For the reasons set forth in the panel opinion and in Parts I and II of Judge Katsas's statement concurring in the denial of rehearing en banc, I continue to believe that it is incorrect to rely upon the so-called *Dost* factors, *see United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), to define the statutory text at issue in this case. I therefore vote to deny rehearing en banc.  Upon reflection, I find merit in some of the criticism of the panel opinion in Part III of Judge Katsas's statement, as the panel opinion could be read to have inadvertently narrowed the statutory language beyond its plain and ordinary meaning.  As such, I and Judge Rogers hereby grant panel rehearing to clarify that we hold "lascivious exhibition of the genitals," as defined in 18 U.S.C. § 2256(2)(A), means that the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in *any* type of sexual activity. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY (1981) (defining "lascivious" to mean, among others, "inclined to lechery: lewd, lustful"); BLACK'S LAW DICTIONARY (5th Ed. 1979) (defining "lascivious" as, among others, "tending to incite lust" and "lewd").

KATSAS, *Circuit Judge*, concurring in the denial of rehearing en banc: Charles Hillie secretly filmed a girl changing clothes, using the toilet, and cleaning her genitals. In these videos, the girl's genitals are periodically visible. This case presents the question whether the videos are child pornography, which is unlawful to produce or possess. The answer depends on whether the girl engaged in any sexually explicit conduct, which in turn depends on whether she made a lascivious exhibition of her genitals.

In my view, "lascivious exhibition" means revealing private parts in a sexually suggestive way. Because the girl here did not do that, the statutes at issue do not cover the videos, as the panel correctly concluded. The original panel opinion seemed to go much further. It held that revealing genitals in a sexually suggestive way is *not* lascivious exhibition *unless* the display at least simulates some other sex act. That construction was mistaken, and it would have substantially narrowed the many important federal laws combatting child pornography. For that reason, I originally voted to grant en banc review, despite my agreement with the panel on the result in this case. But because the panel has assuaged my concerns through its grant of rehearing, I conclude that en banc review is no longer necessary or appropriate.

I

A jury convicted Hillie of producing and possessing child pornography. One of the governing statutes makes it unlawful to employ or use a child to engage in "sexually explicit conduct" in order to produce a "visual depiction of such conduct." 18 U.S.C. § 2251(a). The other statute makes it unlawful to possess any "visual depiction" of a child engaging in "sexually explicit conduct." *Id.* § 2252(a)(4)(B). For purposes of both offenses, "sexually explicit conduct" is a defined term that means the "actual or simulated" performance of any of five enumerated acts: (i) sexual intercourse,

(ii) bestiality, (iii) masturbation, (iv) sadistic or masochistic abuse, or (v) "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A).

The panel reversed these convictions. It held that a child does not engage in a "lascivious exhibition" under section 2256(2)(A)(v) unless she displays her private parts "in a manner that connotes the commission of one of the four sexual acts in the list." *United States v. Hillie*, 14 F.4th 677, 688 (D.C. Cir. 2021). Under that construction, the panel found insufficient evidence to sustain the convictions. *Id.* at 688–89.

## II

A child engages in "lascivious exhibition" under section 2256(2)(A)(v) if, but only if, she reveals her anus, genitals, or pubic area in a sexually suggestive manner.

Start with the adjective "lascivious." It is commonly defined as "lustful" or "tending to arouse sexual desire." *Lascivious*, *Webster's Third New International Dictionary* (1961) (capitalization omitted); *see also Lascivious*, *The American Heritage Dictionary* (2d college ed. 1982) ("arousing or exciting sexual desire"; "expressing lust or lewdness"); *Lascivious*, *Black's Law Dictionary* (6th ed. 1990) ("Tending to excite lust; lewd; indecent; obscene"); *Lascivious*, *Oxford English Dictionary* (2d ed. 1989) ("Inclined to lust, lewd, wanton"; "[i]nciting to lust or wantonness"); *Lascivious*, *Random House College Dictionary* (rev. ed. 1980) ("inclined to lustfulness; wanton; lewd"; "arousing or inciting sexual desire"; "expressing lust or lewdness"). In other words, a lascivious action is one that is "sexual in nature," *United States v. Hensley*, 982 F.3d 1147, 1156 (8th Cir. 2020) (cleaned up), or "sexually suggestive," *United States v. Schenck*, 3 F.4th 943, 949 (7th Cir. 2021) (cleaned up).

Next consider the phrase "lascivious exhibition." In section 2256(2)(A)(v), "lascivious" modifies the "exhibition" of private parts, and it does so to define one category of sexually explicit conduct. "Lascivious" does not modify the "visual depiction" of the exhibition, which is what other provisions make unlawful to produce or possess. *See* 18 U.S.C. §§ 2251(a), 2252(a)(4)(B). Section 2256(2)(A)(v) thus requires the exhibition itself to be sexually suggestive. A child who uncovers her private parts to change clothes, use the toilet, clean herself, or bathe does not *lasciviously* exhibit them. To be sure, a voyeur who secretly films a child engaged in such tasks may do so for his own sexual gratification, or for the gratification of others who will see the depiction. But the definition turns on whether the exhibition itself is lascivious, not whether the photographer has a lustful motive in visually depicting the exhibition or whether other viewers have a lustful motive in watching the depiction.

Finally, recall that section 2256(2)(A)(v) uses the phrase "lascivious exhibition" to define a category of "sexually explicit conduct." When a statutory definition contains an unclear term, the ordinary meaning "of the word actually being defined" can shed light on the term's meaning. A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012); *see Bond v. United States*, 572 U.S. 844, 861–62 (2014); *Johnson v. United States*, 559 U.S. 133, 139–41 (2010). In everyday speech, nobody would say that it is sexually explicit conduct to uncover private parts simply to change clothing, use the toilet, or take a shower. Nor would anybody say that a girl performing such acts is engaged in sexually explicit conduct just because *someone else* looks at her with lust. In contrast, the other four listed acts—intercourse, bestiality, masturbation, and sadistic or masochistic abuse— are all "sexually explicit conduct" in the ordinary sense of that

phrase. It would be strange if lascivious exhibition of private parts, lone among them, were not.

Judge Henderson reads the phrase "lascivious exhibition" more broadly. In her view, it can cover images of a naked child created by a photographer to arouse his own lustful urges, or those of other viewers, even if the child is engaged in no conduct related to sex. *Hillie*, 14 F.4th at 702–03 (Henderson, J., dissenting). Many courts of appeals agree. *See*, *e.g.*, *United States v. Spoor*, 904 F.3d 141, 146–50 (2d Cir. 2018) (video of boy changing into a swimsuit and two boys urinating); *United States v. Miller*, 829 F.3d 519, 523–26 (7th Cir. 2016) (video of girls undressing or showering); *United States v. Holmes*, 814 F.3d 1246, 1248, 1252 (11th Cir. 2016) (video of girl performing daily bathroom routine). These cases reason that the videos themselves "were an exhibition," which was made "lascivious" when "presented by the photographer so as to arouse or satisfy the sexual cravings of a voyeur." *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987). But this account cannot be reconciled with the governing statutory text. As explained above, it is the photographed child who must engage in "sexually explicit conduct" under sections 2251(a) and 2252(a)(4)(B), and thus the child who must make a "lascivious exhibition" under section 2256(2)(A)(v). A video of the child is not itself "sexually explicit conduct," but rather is the "visual depiction of such conduct," which is what cannot lawfully be produced or possessed.

Judge Rao gives two further reasons for reading "lascivious exhibition" broadly. First, she notes that juries have wide latitude in determining what constitutes obscenity or child pornography. *Post* at 2–4. True enough, at least when a jury is determining "contemporary standards" as relevant to obscenity. *See Miller v. California*, 413 U.S. 15, 30–34 (1973). But juries cannot convict based on mistaken interpretations of

the governing statute. Second, she notes that the Child Protection Act of 1984 substituted "lascivious" for "lewd" in what is now section 2256, and this Act must have accomplished something. *Post* at 6; *see* Pub. L. No. 98-292, § 5(a)(4), 98 Stat. 204, 205. The Act did have significant effect: By deleting an obscenity limitation from section 2252, it sought "to expand the child pornography statute to its full constitutional limits" under *New York v. Ferber*, 458 U.S. 747 (1982), which upheld the prohibition of child pornography regardless of whether it is legally obscene. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 74 (1994); *see* Pub. L. No. 98-292, § 4(3), 98 Stat. at 204. Replacing "lewd" with "lascivious" perhaps underscored this point, for "lewd exhibition of the genitals" is a phrase referenced in *Miller* as an example of offensive material that may, if it is the focus of an entire work, be constitutionally prohibited as obscene. *See* 413 U.S. at 25. But regardless, we cannot read the Act as eliminating a requirement that the child's exhibition be sexual in nature. In *X-Citement Video*, the Supreme Court rejected vagueness and overbreadth challenges to the amended section 2256 "for the reasons stated" by the Ninth Circuit, 513 U.S. at 78–79, which had rejected those challenges precisely because "'lascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller*," 982 F.2d 1285, 1288 (9th Cir. 1992) (cleaned up). Many dictionaries, statutes, and other cases confirm that "lewd" and "lascivious" are synonyms. *See supra* at 2 (dictionary definitions); 18 U.S.C. § 1462(a) & (b) (prohibiting import of any "obscene, lewd, lascivious, or filthy" books or records); *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006) (collecting federal cases); *Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971); *State v. Settle*, 156 A.2d 921, 924 (R.I. 1959); *State v. Bouye*, 484 S.E.2d 461, 464 (S.C. 1997); *State v. Whited*, 506 S.W.3d 416, 430 (Tenn. 2016); *Pedersen v. City of Richmond*, 254 S.E.2d 95, 98 (Va. 1979). And the presumption that a change

in language indicates a change in meaning "does not apply to stylistic or nonsubstantive changes," Scalia & Garner, *supra*, at 256, such as substituting one synonym for another.

The videos that Hillie produced and possessed showed a girl performing ordinary, age-appropriate actions—changing clothes, using the toilet, and cleaning herself. Because none of these actions was sexually suggestive, the panel correctly concluded that the videos do not amount to child pornography.

## III

Despite reaching the right result here, the original panel opinion adopted an overly narrow standard for what constitutes a "lascivious exhibition" under section 2256(2)(A)(v). According to that opinion, sexual suggestiveness is not enough to make an exhibition lascivious. Rather, the child's conduct must "connote[] the commission" of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse—the other acts separately listed in the definition of sexually explicit conduct. *See* 14 F.4th at 688. This further requirement all but reads the "lascivious exhibition" clause out of the definition. And in so doing, it substantially narrows the reach of all federal statutes combatting child pornography.

For its interpretation, the original panel opinion relied primarily on the discussion of what constitutes "simulated" and "explicit" sexual conduct in *United States v. Williams*, 553 U.S. 285 (2008). There, the Supreme Court explained that "simulated" sexual intercourse could conceivably describe R-rated movie scenes "which suggest that intercourse is taking place without explicitly depicting it." *Id.* at 296–97. But, the Court continued, section 2256(2)(A) also requires "sexually *explicit* conduct," and that phrase "connotes actual depiction of the sex act rather than merely the suggestion that it is occurring." *Id.* Thus, "simulated" intercourse must be

"intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred." *Id.* at 297. Drawing upon this language, the panel concluded that a lascivious exhibition "must be performed in a manner that connotes the commission of one of the four sexual acts in the list." 14 F.4th at 688. I am not exactly sure what the word "connotes" means in this formulation. But given the Supreme Court's discussion of what "explicit" sexual conduct requires, the panel's formulation would seem to require at least the simulated commission of one of the "four sexual acts" listed in romanettes (i) to (iv) of section 2256(2)(A).

This construction reads "lascivious exhibition" out of the statute. By its terms, section 2256(2)(A) defines *five* kinds of conduct, whether "actual or simulated," as "sexually explicit conduct." And it separately enumerates "lascivious exhibition" as the fifth of those categories. *Williams* does not support contracting five categories into four. Under its logic, although section 2256(2)(A) extends to "simulated" lascivious exhibition, it would not cover a lascivious exhibition that was "merely suggested." *See* 533 U.S. at 297. That is far different from concluding that lascivious exhibition must all but amount to intercourse, bestiality, masturbation, or sadistic or masochistic abuse.

The original panel opinion also claimed support from statements in *Miller* and *Ferber* that the respective definitions of obscenity and child pornography cover only "'hard core' sexual conduct." 14 F.4th at 684–86 (cleaned up). The opinion overread the significance of that phrase. In *Miller*, the Supreme Court did not attempt to define the phrase, but it did give several examples, including "ultimate sexual acts, normal or perverted, actual or simulated," as well as "masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. at 25. So whatever the Court understood the phrase "hard

core sexual conduct" to cover, it could not have meant only actual or simulated acts of sexual gratification. And it did not seek to elaborate on the meaning of "lewd exhibition of the genitals"—the direct analog of the term at issue here. Nor did *Ferber*, which used the phrase "hard core" only once, not to fix the outer bound of what might constitute child pornography but to describe the heartland of a statute unsuccessfully challenged as overbroad. 458 U.S. at 773. Nothing in *Miller* or *Ferber* suggests that we should give the phrase "lascivious exhibition" anything besides its ordinary meaning.

The consequences of this narrowing construction would be far reaching. The definition of "sexually explicit conduct" in section 2256(2)(A) is not limited to sections 2251 and 2252. By its terms, it applies throughout chapter 110 of title 18, which covers "Sexual Exploitation and Other Abuse of Children." Section 1466A of title 18, dealing with constitutionally obscene child pornography, also incorporates the definition. 18 U.S.C. § 1466A(f)(2). Chapter 110 and section 1466A together contain all the federal statutes combatting child pornography, including provisions criminalizing the selling and buying of children to be used in child pornography; the shipping, distribution, receipt, advertisement, and reproduction of child pornography; and the production of child pornography abroad to be imported to the United States. *Id.* §§ 1466A, 2251A, 2252A, 2260. All told, federal courts annually sentence nearly 2,000 defendants for offenses incorporating this definition. U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography: Production Offenses* 17 (2021). The definition also applies to civil actions brought by victims of child pornography. 18 U.S.C. § 2255(a).

Other statutes do not much fill the gap left by the unduly narrow construction of the original opinion. It emphasized that statutes prohibiting voyeurism may apply even in the absence

of any "lascivious exhibition." 14 F.4th at 694. But the federal voyeurism statute applies only in the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 1801(a). And in many jurisdictions, including the District of Columbia, voyeurism is only a misdemeanor with no special enhancement when children are involved. *See id.*; D.C. Code § 22-3531(f)(1).

In response to some of these criticisms, the panel has now granted rehearing to clarify that "lascivious exhibition" covers children revealing their genitals in a manner connoting "sexual desire or an inclination to engage in *any* type of sexual activity." *Ante* at 1. I read that standard as consistent with my view that the term includes any act of revealing the genitals in a sexually suggestive way, regardless of whether the child subjectively intends to express sexual desire. As that clarification obviates the concerns I have sketched out above, I think that en banc review is no longer necessary.[1]

---

[1] The panel also vacated Hillie's convictions for attempted production of child pornography, 18 U.S.C. § 2251(e), which were based on four videos that did not end up visually depicting a minor's private parts. According to the panel, there was insufficient evidence that Hillie specifically intended to produce videos with the requisite degree of sexual explicitness. 14 F.4th at 695. But Hillie surreptitiously recorded girls "by hiding a video camera in the bathroom ceiling vent and in a bedroom dresser." *Id.* at 692. Under these circumstances, a jury could readily infer that his interest in the girls was sexual, not sartorial or urological. Given that, the jury could further infer that Hillie hoped to capture sexually explicit conduct, not merely things like changing clothes or using the toilet. The government, however, does not seek en banc review on this basis.

RAO, *Circuit Judge*, with whom Circuit Judges HENDERSON and WALKER join, dissenting from the denial of rehearing en banc: In our criminal justice system, it is the jury's job to determine whether the facts of a particular case constitute a crime. As long as the jury's determination is reasonable, its verdict must stand. In this case, Charles Hillie secretly filmed his girlfriend's minor daughter undressing in her bedroom and using the restroom, and was thereafter convicted of making and possessing child pornography. Striking down the jury's verdict, the panel majority held that no reasonable jury could conclude that the conduct depicted in the videos was a "lascivious exhibition of the anus, genitals, or pubic area." 18 U.S.C. § 2256(2)(A)(v). The panel concluded that Supreme Court precedent compelled it to construe "lascivious exhibition" as referring only to "hard core" sexual conduct. I disagree with that reading of the caselaw and with the panel majority's restrictive reading of the child pornography statute. Because our circuit is now the only one to construe this important criminal statute in this excessively narrow manner, I would grant rehearing en banc.

\* \* \*

Hillie was charged with violating various child pornography statutes for producing and possessing two hidden camera videos. The first, recorded in a bedroom, depicts a minor undressing, cleaning her genitals and legs with a towel, and applying lotion to herself. *United States v. Hillie*, 14 F.4th 677, 680–81 (D.C. Cir. 2021). Throughout the video, her genitals, breasts, and pubic area are periodically visible. *Id.* at 681. The second, recorded in a bathroom, depicts a minor sitting on a toilet with the upper part of her buttocks visible, and then wiping her pubic area with a washcloth. Her pubic area is visible during parts of the video. *Id.*

Based on those videos, Hillie was convicted of violating 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B). *Id.* at 680. Those statutes criminalize, as relevant here, using "any minor … with

the intent that such minor engage in[] any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," 18 U.S.C. § 2251(a), and "knowingly possess[ing] … video tapes … which contain any visual depiction … if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct," *id.* § 2252(a)(4)(B). Congress has defined "sexually explicit conduct" to mean "sexual intercourse," "bestiality," "masturbation," "sadistic or masochistic abuse," or "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A).

Hillie challenges the sufficiency of the evidence supporting his conviction and so the question is whether a reasonable jury could conclude that the hidden camera videos he recorded and possessed constitute a visual depiction of a "lascivious exhibition." A reasonable jury could. We must affirm "a guilty verdict where any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Littlejohn*, 489 F.3d 1335, 1338 (D.C. Cir. 2007) (cleaned up).

Whether the conduct depicted in Hillie's videos was a "lascivious exhibition" of a minor's genitals is an objective, factual inquiry. *Cf. United States v. Williams*, 553 U.S. 285, 301 (2008) (holding that a related child pornography statute was violated only if the material "in fact … meet[s] the statutory definition" of sexually explicit conduct). The Supreme Court has instructed us to "rely on the jury system" to "resolv[e] the inevitably sensitive questions of fact and law" involved in determining whether graphic material is obscene. *Miller v. California*, 413 U.S. 15, 26 (1973). And our sister circuits generally have found that whether particular conduct is a "lascivious exhibition" is fundamentally a question for the

jury.[1] "[A]s we do with rape, murder, and a host of other offenses against society and its individual members," we must also "rely on the jury system" to determine whether the conduct depicted in a video is in fact a "lascivious exhibition," and thus constitutes a child pornography offense. *Miller*, 413 U.S. at 26.

In making this determination, the jury does not have free rein to reach any conclusion it desires. The jury's conclusion that conduct depicted in a video is a "lascivious exhibition" must be rational. Many of our sister circuits have approved the use of a non-exhaustive list of factors to guide the jury's inquiry. *See Hillie*, 14 F.4th at 699 nn.5–12 (Henderson, J., dissenting) (collecting cases); *see also United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) (originally outlining the factors). Considering these factors, along with others, a court may conclude it was not rational for a jury to find that certain conduct was a "lascivious exhibition." But as the dissenting opinion explains, the jury's conclusion in this case was rational. *See Hillie*, 14 F.4th at 700–01 (Henderson, J.,

---

[1] *See, e.g.*, *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006) ("Lascivious is a commonsensical term, and whether a given depiction is lascivious is a question of fact for the jury.") (cleaned up); *United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008) (looking at whether a "reasonable jury could … find" that certain "photographs depict the lascivious exhibition of a minor's genitals"); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (identifying the *Dost* factors as "for the trier of fact to consider"); *United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016) ("[T]he question of whether an image is lascivious is left to the factfinder to resolve, on the facts of each case, applying common sense.") (cleaned up); *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019) ("Whether the materials actually depict a lascivious exhibition is a question of fact."); *United States v. Wells*, 843 F.3d 1251, 1253 (10th Cir. 2016) ("The sole issue in this appeal is whether a rational jury could have found beyond a reasonable doubt that any of the videos depicts such a lascivious exhibition[.]").

4

dissenting). A different jury might have reached a different conclusion, but "[t]hat is one of the consequences we accept under our jury system." *Miller*, 413 U.S. at 26 n.9 (quoting *Roth v. United States*, 354 U.S. 476, 492 n.30 (1957)).

I agree with the panel majority that, "where the defendant's conduct 'fails to come within the statutory definition of the crime,'" his conviction cannot stand. *Hillie*, 14 F.4th at 683 (quoting *Griffin v. United States*, 502 U.S. 46, 59 (1991)). The panel errs, however, in imposing an unduly restrictive definition onto the words "lascivious exhibition," reading them to cover only situations where "the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity." Concurring Op. 1 (Wilkins, J.).[2] This definition is overly restrictive—a rational jury could conclude that exhibitions in which the minor does not exhibit sexual desire or an inclination to engage in sexual activity are nevertheless "lascivious." None of our sister

---

[2] The panel originally defined "lascivious exhibition" to cover only "visual depictions in which a minor, or someone interacting with a minor, engages in conduct displaying their anus, genitalia, or pubic area in a lustful manner that connotes the commission of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse." *Hillie*, 14 F.4th at 687. The revised definition in the grant of panel rehearing avoids the problem of collapsing "lascivious exhibition" into the other types of sexually explicit conduct defined by the statute, but does not avoid the more fundamental problem of restricting what a rational jury may consider to be a "lascivious exhibition."

circuits have adopted an interpretation focusing on the minor's "sexual desire" or "inclination to engage in sexual activity."

The panel majority concludes that "lascivious exhibition" must be narrowly interpreted because, in a series of First Amendment cases, the Supreme Court has construed the phrase to be limited to "hard core" sexual conduct. *See Hillie*, 14 F.4th at 684–86. I disagree. On my reading of the caselaw, the Supreme Court has never defined the statutory term "lascivious exhibition," nor has it implied that the phrase must be given a narrow meaning. In particular, I disagree that *New York v. Ferber*, 458 U.S. 747, 765, 773 (1982), held that the phrase "lewd exhibition of the genitals" meant only "hard core" pornography. In *Ferber*, the Court rejected an overbreadth challenge to a New York law criminalizing the production of a "play, motion picture, photograph, … or any other visual representation" in which a minor engaged in the "lewd exhibition of the genitals." *Id.* at 751 (cleaned up). The Court explained the statute was not unconstitutionally overbroad because, even though it might occasionally be necessary to "employ children to engage in conduct clearly within the reach of [the statute] in order to produce educational, medical, or artistic works," the statute was "directed at the hard core of child pornography." *Id.* at 773. In other words, the Court recognized that non-hard-core conduct fell within the definition of "lewd exhibition," but declined to hold the statute overbroad because there would be too few unconstitutional applications.

The panel majority similarly cannot rely on *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994). In that case, the Court summarily dismissed a constitutional overbreadth challenge to the same statutory provisions at issue here, noting simply that the argument was "insubstantial" and therefore rejecting it "for the reasons stated by the [Ninth

Circuit]." *Id*. To be sure, the Ninth Circuit had rejected the overbreadth argument because "lascivious is no different in its meaning than lewd." *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992) (cleaned up). But this is a weak reed on which to rest the conclusion that in *X-Citement Video* the Supreme Court held "lewd" and "lascivious" are synonymous. The Court provided no definition of "lascivious exhibition," and its passing endorsement of the Ninth Circuit's opinion gave no indication that it meant to adopt every part of the lower court's reasoning. *See Hillie*, 14 F.4th at 702 n.19 (Henderson, J., dissenting) (noting agreement with other circuits that the Supreme Court has never defined "lascivious exhibition"). It would be surprising for the Court to hold *sub silentio* that when Congress amended the child pornography statute and explicitly replaced the word "lewd" with "lascivious," it was accomplishing nothing at all. *See* Child Protection Act of 1984, Pub. L. No. 98-292, § 5(a)(4), 98 Stat. 204, 205 (amending the definition of sexually explicit conduct "by striking out 'lewd' and inserting 'lascivious' in lieu thereof"); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 256 (2012) ("[A] change in the language of a prior statute presumably connotes a change in meaning.").

In the nearly thirty years since *X-Citement Video*, thousands of defendants have been prosecuted under federal child pornography laws.[3] In that time, not one of our sister circuits has adopted the panel majority's strained logic—piecing together snippets of *Ferber* and *X-Citement Video* to reach the conclusion that any "lascivious exhibition" must, by definition, be limited to "hard core" conduct. As the panel

---

[3] *See* U.S. SENTENCING COMM'N, QUICK FACTS: CHILD PORNOGRAPHY OFFENDERS (2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Child_Pornography_FY20.pdf.

majority recognizes, Hillie did not make this strained argument either. *Hillie*, 14 F.4th at 686–87; *see also Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*, 158 F.3d 1335, 1338 (D.C. Cir. 1998) ("[W]e ordinarily do not entertain arguments not raised by [the] parties.").

Because the Supreme Court has not interpreted "lascivious exhibition" as referring only to "hard core" conduct, I would give the statutory text its "ordinary meaning." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407 (2011). An exhibition is "lascivious" if it is "[i]nciting to lust or wantonness." 8 OXFORD ENGLISH DICTIONARY 666–67 (2d ed. 1989); *see also Lascivious*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("Tending to excite lust; lewd; indecent; obscene."). To "resolv[e] the inevitably sensitive questions of fact and law" that arise in determining whether a given exhibition is inciting to lust or wantonness, "we must continue to rely on the jury system." *Miller*, 413 U.S. at 26. In other words, although whether certain conduct amounts to a "lascivious exhibition" is an objective question, it may be difficult to define precisely what conduct qualifies as lascivious. Conduct "connoting that the minor … exhibits sexual desire or an inclination to engage in *any* type of sexual activity" will almost always qualify, but so too might other types of conduct.

Here, a reasonable jury could have found that the conduct depicted in Hillie's two videos satisfies the statutory definition. Instead of deferring to the jury's reasonable determination, the panel holds—uniquely among the circuits—that because the child victim did not expose herself in a manner exhibiting sexual desire or an inclination to engage in sexual activity,

Hillie did not break the law. *Hillie*, 14 F.4th at 687; *see also* Concurring Op. 6 (Katsas, J.).

\* \* \*

While our sister circuits differ on how precisely to use the *Dost* factors, none have adopted the narrow interpretation of "lascivious exhibition" advanced by the panel majority. As a result, our circuit is now the only one in which, as a matter of law, a defendant like Hillie cannot be convicted of making or possessing child pornography. *Compare Hillie*, 14 F.4th at 688–89, *with United States v. Miller*, 829 F.3d 519, 525–26 (7th Cir. 2016) (upholding the trial court's verdict that the defendant had produced videos depicting "lascivious exhibition[s]" when he secretly filmed minors undressing and showering).

The statute at issue is critical for protecting minors from sexual exploitation, which the Court has described as "a government objective of surpassing importance." *Ferber*, 458 U.S. at 757. Because the panel majority erroneously narrows the conduct a rational jury might find to be a "lascivious exhibition," I would grant rehearing en banc.